**Sally ALVARADO, Appellant,**

v.

**Richard GONZALES, Appellee.**

**No. 1183.**

Court of Civil Appeals of Texas, Corpus Christi.

May 19, 1977.

Richard D. Hatch, Sinton, Lewis F. Boyd, Texas Dept. of Public Welfare, Austin, for appellant.

Reynaldo S. Cantu, Jr., Kingsville, for appellee.

## OPINION

BISSETT, Justice.

This is an appeal from a judgment of the 156th District Court of San Patricio County, Texas, wherein the court sustained the appellee's plea of limitation to the action to establish paternity and for support of an illegitimate child and dismissed the suit.

Sally Alvarado, in her petition, alleged that she is the mother of the child, Carlos Anthony Alvarado, who was born September 22, 1974; that the child was born out of wedlock; that Richard Gonzales is the father of the child; that she was without sufficient financial resources to provide for the support of the child; and that Richard Gonzales is financially able to contribute to the support of the child. She prayed that Richard Gonzales be declared to be the father of the child and that he be ordered to contribute to the support of the child. Richard Gonzales, in his original answer, denied the allegations made by Sally Alvarado in her petition, and pled the one-year

statute of limitations as a bar to the action. The trial court sustained the plea of limitations under the authority of the Texas Family Code Ann. § 13.01 (1975), and dismissed the action. Sally Alvarado has duly and timely perfected an appeal from that judgment to this Court.

The appellant, in effect, contends that the trial court erred in rendering the aforesaid judgment because the statute of limitations involved: 1) applies only prospectively and not retroactively; 2) as applied in this case, violates the State Constitutional prohibition of retroactive legislation; 3) invidiously discriminates between illegitimate and legitimate children and thereby violates the Fourteenth Amendment of the United States Constitution; and 4) as here applied, has the effect of invidiously discriminating on the basis of sex.

The appellee asserts: 1) the statute expressly and by implication provides for retroactive application; 2) the constitutional prohibition against retroactive laws has no application to the statute; 3) the application of the statute to the facts of this case does not discriminate invidiously against illegitimate children; and 4) the statute does not place the burden of support on the mother and, therefore, is not invidiously discriminative on the basis of sex.

■ The right of an illegitimate child to obtain support from his or her natural father has been recognized since the United States Supreme Court decision of *Gomez v. Perez*, 409 U.S. 535, 93 S.Ct. 872, 35 L.Ed.2d 56 (1973). In that case, the mother filed suit in the District Court of Bexar County, Texas, wherein she sought to have the defendant declared to be the father of the child, which was born out of wedlock, and to require him to support the child. The trial court decreed that the defendant was the father of the child, but further decreed that there was no civil liability on his part to support the child. The judgment of the trial court was affirmed on appeal. See *L___ G___, Z___ G___ v. F___ O.P___*, 466 S.W.2d 41 (Tex.Civ. App.—San Antonio 1971, writ ref'd n. r. e.). The United States Supreme Court, how-

ever, reversed the judgments of both courts and held that once a state posits a judicially enforceable right on behalf of children to needed support from their natural fathers, there is no constitutionally sufficient justification for denying that right to a child simply because the natural father has not married the child's mother. The court also noted that the problems of proof of paternity may not be made into an "impenetrable barrier that works to shield otherwise invidious discrimination."

Another case which bears on the issue here presented is *In Interest of R_____ V_____M_____*, 530 S.W.2d 921 (Tex.Civ. App.—Waco 1975, no writ). In that case, which was a paternity suit coupled with an action against the alleged father of an illegitimate child for the support of the child, the child was born on November 16, 1973. Suit was filed on June 25, 1974 and judgment declaring the defendant to be the natural father of the child and requiring him to contribute to the child's support was rendered on May 23, 1975. The judgment was affirmed. The Waco Court of Civil Appeals noted that at the time suit was filed and when the judgment by the trial court was rendered, the statutes of this State required the father of a legitimate child to support the child; but they did not require the father to support his illegitimate child. Following the decision of the United States Supreme Court in *Gomez*, which was made on January 17, 1973, it was stated by the court in its opinion that the rule announced in *Gomez* "became the law of Texas at that time on the constitutional question involved," and further said:

"  .   .   .   When the Legislature later provided judicial relief against the father on behalf of a legitimate child for support, it necessarily provided the same relief on behalf of an illegitimate child. Stated another way, having provided judicial recourse on behalf of a legitimate child against its father for support, the State may not now deny that same action on behalf of an illegitimate child."

Title 2, consisting of Sections 11.01 to 35.03, was added to the Texas Family Code by Acts 1973, 63rd Leg., p. 1411, ch. 543 § 1, effective January 1, 1974. Section 4 thereof provides:

"(a) This Act takes effect on January 1, 1974, and governs all proceedings, orders, judgments, and decrees in suits and actions brought after it takes effect, and also all further proceedings in actions then pending, except to the extent that in the opinion of the court its application in an action pending when this Act takes effect would not be feasible or would work injustice. All things properly done under any previously existing rule or statute prior to the taking effect of this Act shall be treated as valid."

"(b) Any action or suit commenced after January 1, 1974, that has as its object the modification of an order, judgment, or decree entered prior to January 1, 1974, but which under this Act would be a suit affecting the parent-child relationship, is governed by the provisions of this Act, and shall be treated as the commencement of a suit affecting the parent-child relationship in which no court has continuing exclusive jurisdiction."

Title 2, as originally enacted, in Chapter 13 thereof, established procedures for the voluntary legitimation of an illegitimate child, it did not provide for involuntary legitimation. Chapter 13 was revised and amended by Acts 1975, 64th Leg., p. 1261, ch. 476, § 24, to read "Determination of Paternity." The amendments, which became effective on September 1, 1975, established procedures for involuntary legitimation of a child, and further provided for a time limitation period within which to establish paternity by suit. Section 13.01, as amended, provides:

"A suit to establish the parent-child relationship between a child who is not the legitimate child of a man and the child's natural father by proof of paternity must be brought before the child is one year old, or the suit is barred."

The illegitimate child in this case was born prior to the effective date of the statute of limitations pertaining to paternity suits. Since the statute was interpreted to

be operative on a past event, i. e., the birth of the child, its application by the trial court is retroactive. See 59 A.L.R.3d 685, 719–20 (1974).

Statutes of limitation rest upon reasons of sound public policy in that they tend to promote the peace and welfare of society, safeguard against fraud and oppression and compel the settlement of claims within a reasonable time after their origin and while the evidence remains fresh in the minds of the witnesses. Statutes of limitation are devices intended to protect the courts from stale claims and to keep an individual from being put to defense after his memory has faded, witnesses have disappeared and the evidence has been lost. As such, limitation statutes are employed to prevent fraud, perjury and mistake even though the operation of such statutes in some instances is arbitrary and the result may be harsh. *Chase Securities Corporation v. Donaldson*, 325 U.S. 304, 314, 65 S.Ct. 1137, 89 L.Ed. 1628 (1945).

Generally, statutes of limitation go to matters of remedy and not to matters of fundamental rights unless the limitation period set is so manifestly unjust that it constitutes a denial of justice or it amounts to a practical denial of the right itself. *Cathey v. Weaver*, 111 Tex. 515, 242 S.W. 447, 454 (1922); 37 Tex.Jur.2d, Limitation of Actions, § 2 (1962). The legislature may without violating constitutional guarantees enact statutes which limit the time within which actions to enforce demands may be brought even though there existed no previous period of limitation; provided that such statute allows a reasonable time within which to bring suit. *Wright v. Hardie*, 88 Tex. 653, 32 S.W. 885, 886 (1895); *Hartely v. Langdon & Company*, 347 S.W.2d 749, 754 (Tex.Civ.App.—Houston 1961, no writ); 37 Tex.Jur.2d, Limitation of Actions, § 6 (1962). The determination of what constitutes a reasonable time is reviewable by the courts. In reviewing the reasonableness of a statute of limitation, the court should consider all relevant circumstances under which the statute is to apply. 32 Am. Jur.2d, Limitation of Actions, § 32 (1970).

A statute should not be given retroactive effect unless such construction is required by explicit language or by necessary construction. *Government Personnel Mut. Life Ins. Co. v. Wear*, 151 Tex. 454, 251 S.W.2d 525, 529 (1952); *National Carloading Corporation v. Phoenix-El Paso Express, Inc.*, 142 Tex. 141, 176 S.W.2d 564, 568 (Tex.Sup.1943), *cert. denied*, 322 U.S. 747, 64 S.Ct. 1156, 88 L.Ed. 1578 (1944); *Aetna Insurance Company v. Richardelle*, 528 S.W.2d 280, 283–4 (Tex.Civ.App.—Corpus Christi 1975, writ ref'd n. r. e.). In determining legislative intent a statute should, where possible, be given a reasonable interpretation, so as to avoid injustice or absurd consequences. *Gulf Ins. Co. v. James*, 143 Tex. 424, 185 S.W.2d 966, 969 (1945); *State Highway Dept. v. Gorham*, 139 Tex. 361, 162 S.W.2d 934, 936 (1942), and, of course, a statute under constitutional attack is construed to be valid if reasonably possible. *County of Cameron v. Wilson*, 160 Tex. 25, 326 S.W.2d 162, 165 (1959); *Texas State Board of Public Accountancy v. W. L. Fulcher*, 515 S.W.2d 950, 953 (Tex. Civ.App.—Corpus Christi 1974, writ ref'd n. r. e.).

Title 2 of the Texas Family Code as originally enacted expressly applied to all proceedings brought after January 1, 1974, the date on which it took effect. The extensive revisions of Title 2 in 1975, effective September 1, 1975, however, did not contain a similar clause.

Retroactive application of the limitation statute would not allow illegitimate children born before the statute took effect, or parties acting in their interest, a reasonable time to bring a paternity suit. Additionally, the limitation period applied retroactively operates as an "impenetrable barrier" upon the right of an illegitimate child to obtain support from his natural father. Furthermore, retroactive application of the limitation statute to this case would, in effect, give this appellant only 21 days, and no more, in which to file suit to establish paternity and to enforce support. As a practical matter, this is too short a period of

time, and imposes more obstructions to the system of justice than it seeks to alleviate. The statute, if applied retroactively, would not give this appellant a fair opportunity to file suit to establish paternity and obtain support for the child before the bar took effect. 51 Am.Jur.2d, Limitation of Actions, § 31 (1970). The rights of the mother of an illegitimate child must have substance if they are to be meaningful. They may not be so restricted by procedural steps leading to such enforcement that they are stripped of meaning even while the rights themselves may technically exist. It is difficult, if not impossible, to perceive why paternity suits, the necessary step in procuration of support for the illegitimate child, should be so restricted. It is apparent that such procedure operates in a manner which is "illogical and unjust" and denied those illegitimate children the substantial benefits accorded children generally.

We conclude that the Legislature intended Section 13.01 of the Texas Family Code, as amended and revised in 1975, to apply only to those suits to establish the paternity of illegitimate children born after September 1, 1975, the effective date of statute. We hold that the statute may not be applied retroactively. It does not bar appellant's action.

The judgment of the trial court is REVERSED and the cause is REMANDED to that court for trial on the merits.