### TEXAS DEPARTMENT OF HUMAN RESOURCES, Appellant,

v.

### Ricky L. CHAPMAN, Appellee.

### No. 19558.

Court of Civil Appeals of Texas, Dallas.

June 28, 1978.

Rehearing Denied Aug. 18, 1978.

Steven A. Smith, State Dept. of Public Welfare, Dallas, for appellant.

Gerald W. Livingston, Bean, Francis, Ford & Wills, Dallas, for appellee.

ROBERTSON, Justice.

The Texas Department of Human Resources sued Ricky L. Chapman under the provisions of Section 13.01 *et seq.* of the Texas Family Code to establish a parent-child relationship between Chapman and an illegitimate child. The department brought the action under an assignment from the child's mother. Chapman filed a plea in bar asserting that the suit was barred by the statute of limitations set forth in Section 13.01 of the Texas Family Code, which provides that a suit to establish the parent-child relationship between an illegitimate child and the alleged natural parent must be brought within one year from the birth of the child. The trial court sustained the plea and dismissed the cause. We affirm.

The initial question on this appeal is whether the one-year statute of limitations set forth in Section 13.01 of the Family Code[1] invidiously discriminates between illegitimate children so as to deny them equal protection of the law. If we conclude that it does not, we must then decide whether the statute denies illegitimate children due process of law.[2]

### Equal Protection

■ The Department first argues that Section 13.01 invidiously discriminates against illegitimates and thereby denies them equal protection of the law. Before deciding this question, we must first determine the applicable standard of constitutional review. Although the Department urges that classifications based on illegitimacy are "suspect" and must be subjected to "strict scrutiny," we cannot apply that standard. In *Mathews v. Lucas,* 427 U.S. 495, 96 S.Ct. 2755, 49 L.Ed.2d 651 (1976), the United States Supreme Court rejected the argument that illegitimacy is a "suspect" classification. According to the court, such classifications are "in the realm of less than

strict scrutiny." Thus, the pertinent analytical approach is whether the statute bears a rational relationship to a legitimate governmental interest. *Mathews v. Lucas, supra,* at 505–510, 96 S.Ct. 2755.

■ With the proper perspective established, we next consider the case of *Gomez v. Perez,* 409 U.S. 535, 93 S.Ct. 872, 35 L.Ed.2d 56 (1973), which forms the foundation of the Department's constitutional attack. In *Gomez,* the supreme court invalidated a Texas statute which granted support rights to legitimate children but denied that right to illegitimates. The court concluded that the statute violated the constitutional guarantee of equal protection, stating:

> [O]nce a State posits a judicially enforceable right on behalf of children to needed support from their natural fathers, there is no constitutionally sufficient justification for denying such an essential right to a child simply because its natural father has not married its mother. (409 U.S. at 538, 93 S.Ct. at 875)

As this language indicates, a state may not *absolutely* foreclose the right of an illegitimate child to receive support from the natural father. Indeed, the court recognized the narrowness of its holding in *Gomez* by stating:

> We recognize the lurking problems with respect to proof of paternity. Those problems are not to be brushed lightly aside, but neither can they be made into an *impenetrable barrier* that works to shield otherwise invidious discrimination. (409 U.S. at 538, 93 S.Ct. at 875) [Emphasis added]

In the present case, however, the challenged statute is not an "impenetrable barrier" to an illegitimate child's right to support. The statute does not *prohibit* a suit for support; rather, the statute simply sets

---

1. Section 13.01 provides:

   A suit to establish the parent-child relationship between a child who is not the legitimate child of a man and the child's natural father by proof of paternity must be brought before the child is one year old, or the suit is barred.

2. Since the child was born in January, 1976, and this suit was not filed until February, 1977, it is undisputed that Section 13.01, if constitutional, bars the present action.

forth a time period within which the suit must be brought. As a matter of constitutional law, statute of limitations relate to remedies, and do not destroy fundamental rights. *Cathey v. Weaver*, 193 S.W. 490 (Tex.Civ.App.—Austin 1917), *aff'd* 111 Tex. 515, 242 S.W. 447 (1917); *Lucia v. United States*, 474 F.2d 565 (5th Cir. 1973). Accordingly, we conclude that the present case is not controlled by *Gomez*, and that our ultimate decision must be based upon whether this limitation on the remedy afforded an illegitimate child is constitutionally deficient.

■ It cannot be denied that proof of paternity places a burden upon illegitimates which is not shared by legitimate children; however, such a proof requirement is an unavoidable and indispensable element of the child's claim for support. *See* Krause, Illegitimacy: Law and Social Policy 82 (1971); note, *Illegitimacy and Equal Protection*, 49 N.Y.U.L.Rev. 479, 511 (1974). Legitimate and illegitimate children are not similarly situated classes. Illegitimate children are fundamentally different from legitimate offspring, for at birth, they have no legal relationship to their natural father. Therefore, it is not only reasonable but *essential* that the state require proof of paternity as a condition of asserting an otherwise equal support right. *Cessna v. Montgomery*, 63 Ill.2d 71, 344 N.E.2d 447 (1976); *Krupke v. Witkowski*, 256 N.W.2d 216 (Iowa 1977). The question presented here is whether a requirement that this proof be made within one year from the birth of the child is reasonably related to a legitimate state interest. We conclude that it is. No supreme court case has held that illegitimates must be given an unrestricted right throughout their minority to bring a paternity suit. The state has a legitimate interest in preventing the litigation of stale or fraudulent claims. The purpose of statutes of limitation is to compel exercise of rights within a reasonable time, so as to afford the opposing party a fair opportunity to defend while the evidence is readily available. *Price v. Anderson's Estate*, 522

S.W.2d 690 (Tex.1975); *Gaddis v. Smith*, 417 S.W.2d 577 (Tex.1967). It may be that the legislature has concluded that the longer the period between birth and suit, the greater the danger of fraud. At the very least, the defendant's problems of proof are substantially increased with the passage of time. It has long been held that the legislature, not the courts, is entrusted with the responsibility of considering the public interest of this state regarding limitation of actions. *See Williams v. Reed*, 160 S.W.2d 316 (Tex.Civ.App.—San Antonio 1942, writ ref'd); *Bean v. J. I. Case Threshing Machine Co.*, 221 S.W. 634 (Tex.Civ.App.— Amarillo 1920, writ ref'd). With respect to paternity actions, the legislative discretion is not subject to judicial review unless the prescribed period is so short as to be tantamount to the "impenetrable barrier" proscribed in *Gomez*. *See Cessna v. Montgomery, supra; Krupke v. Witkowski, supra.* A one-year limitation is not insurmountably brief, and although the forfeited right is important, this court is not empowered to invalidate legislative enactments based on our own policy concepts of what a reasonable time would be.

■ In view of the legitimate state interest in precluding the litigation of stale or fraudulent claims, and the fundamental differences between proving paternity of legitimate and illegitimate children, we conclude that Section 13.01 does not deny illegitimate children equal protection of the law.[3]

### Due Process

■ The Department next contends that Section 13.01 is constitutionally deficient in that it denies illegitimate children due process of law guaranteed under the Fourteenth Amendment to the United States Constitution and Article I, Section 19 of the Texas Constitution. It asserts that the illegitimate child's rights to paternity determination and support are impermissibly tied to the willingness and ability of the mother to

---

**3.** We do not consider whether the various tolling provisions set forth in the Texas Revised

Civil Statutes are applicable to extend the period within which a paternity suit may be filed.

**50**

assert those rights within the prescribed time. According to the Department, the interests of the mother do not always coincide with that of the child, for she may choose not to sue for fear of publicity or in consideration of her continued affection for the child's father. The failure to provide for alternate representation is challenged, and numerous statistics are presented to demonstrate the hardship this provision visits upon the poor, who cannot easily afford paternity suits. However meritorious these considerations may be as matters of policy, they do not rise to the level of constitutional argument. In our judgment, the legislature could reasonably conclude that the support right of an illegitimate child is best protected by requiring the suit to be brought by the mother, and that the potential harm to putative fathers defending stale or fraudulent claims is, on balance, greater than the potential harm to illegitimate children whose support right is forfeited by the mother's inaction. *In re People in Interest of L. B.*, 179 Colo. 11, 498 P.2d 1157 (1972), *cert. denied*, 410 U.S. 976, 93 S.Ct. 1497, 36 L.Ed.2d 173 (1973); *Krupke v. Witkowski, supra; Cessna v. Montgomery, supra.* Accordingly, we hold that Section 13.01 does not deny illegitimate children due process of law under the Fourteenth Amendment or the Texas Constitution.

The Department's final argument is that Section 13.01 violates the due process clause of the Fifth Amendment to the United States Constitution by treating subclasses of illegitimates differently. It asserts that while the statute allows illegitimates who are legitimized within one year of birth to recover support, it denies that right to those who are not timely legitimized. In support of this argument, the Department cites *Jimenez v. Weinberger*, 417 U.S. 628, 94 S.Ct. 2496, 41 L.Ed.2d 363 (1974), which holds that to "conclusively deny" one subclass benefits available to another violates the due process clause of the Fifth Amendment. We cannot accept this contention, for the present statute does not "conclusively deny" any illegitimate child the right to support; rather, the statute merely sets

forth a time period within which the right to support must be asserted. The right to support is thus preserved for all illegitimates, provided, of course, that the paternity suit is filed within the prescribed period. Such a procedural prescription is not a *denial* of due process, but rather a statutory scheme which, if adhered to, *provides* due process to all illegitimate children. Therefore, we conclude that Section 13.01 does not violate the due process clause of the Fifth Amendment.

Affirmed.

GUITTARD, C. J., not participating.