Yolanda SHOCKOME, Appellant,

v.

Joe HERNANDEZ, Appellee.

No. 1469.

Court of Civil Appeals of Texas, Corpus Christi.

Aug. 30, 1979.

Janene Forster, Corpus Christi, for appellant.

Charles N. Cartwright, Prichard, Peeler, Cartwright & Hall, Corpus Christi, for appellee.

## OPINION

NYE, Chief Justice.

This is a paternity suit in which the trial court determined that the petitioner, Joe Hernandez, was the natural father of the child. The court thereafter awarded him the managing conservatorship. The natural mother, Yolanda Shockome, appeals.

The record shows that the natural mother decided to take a trip to California in June of 1978. She left the child at the home of Merced and Paula Hernandez, the grandparents of the petitioner father. When the mother returned to Corpus Christi to pick up the child, the grandparents refused to give up the child. The mother then filed an application for writ of habeas corpus on July 3, 1978, the same date that the father filed his original petition for voluntary legitimation of the child.

The trial court consolidated the two proceedings and ordered an investigation by the Department of Human Resources, in which it was to file a social study report concerning the child and his parents. Three months after the mother had filed her original answer to the paternity suit, she filed a motion in the trial court to compel blood tests of the parties. The hearing on this motion was held on October 16, 1978, only three days before the case was set for trial on its merits. The trial court overruled the motion and refused to require the blood tests.

Where a suit has been filed to establish the parent-child relationship and to determine the paternity, a set procedure is established under subchapter A, §§ 13.01–13.09 of the Family Code. Under this subchapter, where the respondent appears in the paternity suit, the trial court shall order the mother, the alleged father, and the child to submit to blood tests. However, no such requirement of blood tests is set out under the provisions of subchapter B, "Voluntary Legitimation." Here the father of the illegitimate child files a sworn statement of paternity, which must be attached to his petition for legitimation. Once such statement of paternity has been executed as set out in article § 13.22, the statement is prima facie evidence that the child is the child of the person executing the statement and that the person thereafter has an obligation to support the child.

The alleged natural father brought suit under subchapter B for the voluntary legitimation of the subject child. The mother did not consent to the petition. In such a case, the trial court may enter its consent to the legitimation of the child in lieu of the mother's consent, where the court decrees that such is in the best interest of the child. Sec. 13.21(c).

The appellant mother states in the opening paragraph of her brief that, "The sole purpose on appeal is to determine whether the trial court erred in denying blood tests, in legitimating the child, and in awarding custody of the child to the appellee." The mother contends that the trial court abused its discretion in this regard. We find that it did not.

■ Where voluntary legitimation is sought and all of the prerequisites of the statute have been met except for the consent of the natural mother, the requirement to submit to blood tests is discretionary. The record of the hearing on the motion to compel blood tests was not requested or transcribed for the appellant mother. Since the appellant mother has not brought forward a record of the hearing on the motion in this appeal, there is nothing upon which we can find from the evidence and arguments presented whether, as a matter of fact, the trial court abused its discretion as of the time he ruled. *Anderson v. Tall Timbers Corporation*, 162 Tex. 450, 347 S.W.2d 592 (1961). For instance, the trial court could have decided that such tests would have been a time-consuming procedure, requiring the appointment of two or more experts qualified to examine the blood types, and that such action would cause an undue delay of the trial of the case on its merits. It would seem to us that the appellant mother (who, at the time of trial, had temporary custody of the child) could have obtained the same information concerning the blood types by other discovery procedures. At the time of the hearing on the motion, for instance, she was in possession of the child, knew her own blood type (or could have determined the type), and could have by discovery methods determined the blood type of the appellee father prior to the trial on its merits. We do not find from the record of the trial on the merits that the mother's attorney even asked the appellee father the question, "What is your blood type?" All of the parties agree that the blood tests do not prove paternity; only the non-paternity, where the father's blood type, when compared to the mother's blood type, makes it biologically impossible to produce a child with the particular blood type of the alleged offspring.

■ There is ample evidence in the record to support the conclusion that the appellee father is actually the natural father of the child. This is in addition to the statute (sec. 13.23) which makes "the statement of paternity" prima facie evidence that the child is the child of the person executing the statement. Reviewing all of this evidence from the record of the trial on the merits, and considering the presumptions which can be made (including those where there is no record of the hearing on the motion for us to review), we hold that the appellant mother did not show that the trial court abused its discretion in overruling the motion to compel the blood tests. See: *Lutheran Social Service, Inc. v. Meyers*, 460 S.W.2d 887 (Tex.Sup. 1970).

The trial court found that the best interests of the child would be served by consenting to the voluntary paternity and by awarding the managing conservatorship to the father. The appellant mother's other points of error concern no evidence, insufficient evidence, and against the great weight and preponderance of the evidence concerning the trial court's findings. Using the guidelines set forth in the time-honored opinion of *In Re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (1951) and Calvert's article, "No Evidence" and "Insufficient Evidence", 38 Texas L.Rev. 359 (1960), we review all of the evidence in the record.

This record shows that the child was born January 23, 1975, in Corpus Christi. The appellant mother was living with the appellee father at the time the child was born. She admitted in her deposition that she started living with the appellee father in May of 1974, nine months before the birth of the child. She stated that from November of 1973 until the child was born, January 23, 1975, that she had lived with only two men, one of which was the appellee. She lived with the other man prior to the time she started living with the appellee father. She admitted that she had filed a sworn application for welfare benefits in which she named the appellee as the natural father of the child. The record further shows that she filed a sworn application for food stamps, naming the appellee as the natural father of the child. The appellee father testified that when they started living together the appellant mother was not pregnant, and that all the time they had lived together, she had never stated to him that the child was not his natural son. On

one occasion the appellant mother sent a photograph of the child to the appellee father with the following hand-written message on its back: "Your son, Joe Juarique. Two years and ten months, and Mark, seven months. With love always. Hi, daddy." On another occasion when the appellant mother brought the child to the home of the grandparents, she returned one week later and stated to the appellee father, "Here is your son. He is exactly like you and I don't want him anymore. You can have him." The social study report that was filed with the trial court contains expert evidence that would indicate that the best interests of the child would be served by giving the custody of the minor child to the appellee father.

Although the record does contain some conflicting testimony, we believe and so find that the evidence amply supports the trial court's decision to award the managing conservatorship to the appellee father, that such evidence is not against the great weight and preponderance of all of the credible evidence.

Our Supreme Court, in discussing a situation somewhat similar to the case before us, recognized that the trial judge:

". . . has an opportunity to observe and evaluate the personalities of the contending claimants, to weigh the credibility of their testimony, to assess the physical, mental, moral and emotional needs of the child, and to adjudge from personal observation which of the claimants can best meet the needs of the child. His judgment should be reversed only when it appears from the record as a whole that he has abused the discretion entrusted to him." *Herrera v. Herrera,* 409 S.W.2d 395 (Sup.Ct.1966).

We find no abuse of the able trial judge's discretion in this case. *Bennett v. Northcutt,* 544 S.W.2d 703 (Tex.Civ.App.—Dallas 1976, no writ). All of the appellant's points of error have been considered and are overruled. The judgment of the trial court is affirmed.