Howard Lee WYNN, Appellant,

v.

Nori G. WYNN, Appellee.

No. 1536.

Court of Civil Appeals of Texas, Corpus Christi.

Sept. 13, 1979.

Kim A. Cox, Clyde J. Jackson, Jr., Alsup & Alsup, Corpus Christi, for appellant.

Eduardo E. de Ases, Corpus Christi, for appellee.

## OPINION

NYE, Chief Justice.

This is an appeal from a judgment of the 105th District Court of Nueces County, Texas, wherein the court held, in response to the jury's answer to a special issue, that the parent-child relationship existed between appellant and the child that is subject of this suit.

On January 17, 1977, Nori G. Wynn filed suit against Howard Lee Wynn, alleging in substance that she was the mother of a child, John Michael Wynn, who was born out of wedlock on December 13, 1967, about one year after their divorce from one another. She alleged that the defendant was the biological father of the child, and that the purpose of the suit was to establish the parent-child relationship between defendant and the child. In accordance with these allegations, she prayed that the defendant be declared to be the father of the child, that she be awarded reasonable attorney's fees, and for other general relief. Defendant answered with a general denial. Thereafter, the trial court granted plaintiff's request that blood tests be ordered. Following several pre-trial hearings, the case proceeded to trial before a jury which, after hearing the testimony of several witnesses and evidence concerning the results of the blood tests, found the defendant to be the biological father of the child. The trial judge then entered a judgment to that effect. The defendant makes no complaint of the jury findings in his appeal to this Court.

Appellant's major appellate complaints are predicated upon the affirmative defense that plaintiff's suit was barred by the one-year statute of limitations set out in Section 13.01 of the Texas Family Code (Supp.1979). In substance, appellant contends that the right to establish the paternity of an illegitimate child under the terms of the Family Code's involuntary legitimation provisions should not apply to this case because the child was born before September 1, 1975, the effective date of such provisions, and the suit to establish paternity of the child was brought more than one year after such effective date.

We initially observe that appellant defended the suit under a general denial only. The transcript before us is devoid of any written motion or pleading affirmatively asserting such defense. In addition, even assuming that it would be proper to raise such a defense orally, the statement of facts does not contain the provisions of any such motion or pleading dictated to the court reporter for preservation in the statement of facts. There are some oblique references to a "motion to dismiss," apparently based upon some type of limitations defense which, as far as we can discern from a careful reading of the statement of facts, was filed in a related case which had previously been filed in another court (the original divorce court) under a separate file number.[1]

---

1. All references to the limitations defense were made during the course of pre-trial conferences or other hearings called to determine issues pertaining to requests or motions other than a motion to dismiss for the reason that plaintiff's suit was barred by limitations. During the initial pre-trial conference which was held to rule on plaintiff's request that blood tests be ordered, the general procedural setting of this case was generally discussed by the parties and the trial judge.

Apparently, in 1976, appellee mother instituted an action in another court to hold appellant in contempt for failure to pay child support for another child which was a child of the marriage of appellant and appellee. In that same action, appellee also filed a "motion to modify" the prior divorce decree to establish that the child subject of this present suit was the biological child of appellant. Thereafter, the parties apparently became concerned about the propriety of raising the paternity question in a motion to modify a prior decree of divorce. Consequently, according to the discussion, appellant's attorney filed a motion to dismiss the paternity portion of the proceedings which the trial court granted. The precise grounds underlying this motion to dismiss are not revealed by the discussions during the pretrial conference in question pertaining to the present suit before us. The petition to establish paternity in this case was filed thereafter.

The statement of facts does not establish whether there were in fact two motions to dismiss, one in the prior suit and one in this suit, or only one motion to dismiss which was filed in the prior suit. Being concerned that the limitations defense had not been raised or preserved, we requested further elaboration on this point during oral arguments. Appellant's attorney could not point out to us any affirmative pleading in the transcript concerning the limitations defense other than to refer us to the statement of facts of the pre-trial hearing previously discussed herein. Although we provided additional time for appellant's attorney to check into this matter and advise us in a post-submission brief or other appropriate motion, no response from him was filed by the designated due date.

After the evidence was presented by both sides, and before judgment was entered, appellant filed his "Motion in Opposition to Entrance of Final Decree." In this motion, which appears in the transcript, appellant argued that the final decree as proposed by appellee should not be entered for several specific reasons. Appellant's "affirmative defense of limitations" was not one of those mentioned in this motion. After the judgment was entered, appellant filed a motion for new trial where, for the first time in writing, he mentioned the limitations defense. In substance, appellant urged that a new trial should be granted because the trial court refused to grant his motion to dismiss for plaintiff's "failure to bring suit within the one-year statute of limitations as required by V.A.T.S. Family Code § 13.01."

There is nothing in the record from which we can reasonably conclude that the affirmative defense of limitations was ever properly before the trial court during the actual paternity proceedings. Limitations was not plead as a part of defendant's original answer. There was no special exception in the pleadings attacking plaintiff's petition on the basis that such petition plead facts which affirmatively established the validity of the limitations defense. The alleged "motion to dismiss" has not been produced before this Court in spite of inquiries made by this Court during oral arguments, nor has its absence been explained or justified in any manner. No mention of the limitations defense was made during the course of the trial on the merits. No special issue relating to this defense was requested by the appellant or submitted to the jury. No attempt was ever made to amend appellant's answer to include the defense of limitations. Finally, appellant does not in any manner suggest or contend that the limitations defense was tried by implied consent.

It is well-settled law that a mere general denial will not place in issue the affirmative defense of limitations which must, pursuant to Rule 94, T.R.C.P., be specially pleaded. *Southwestern Fire & Casualty Co. v. Larue,* 367 S.W.2d 162, 163 (Tex.Sup.1963); *Shell Chemical Co. v. Lamb,* 493 S.W.2d 742 (Tex.Sup.1973); *Boswell v. Handley,* 397 S.W.2d 213 (Tex.Sup.1965). Affirmative defenses, in the absence of trial by consent, are waived if not affirmatively pleaded. *Petroleum Anchor Equipment, Inc. v. Tyra,* 419 S.W.2d 829, 835 (Tex.Sup. 1967). Even though a plea of limitations is a matter of an affirmative defense that must be specially pleaded or tried by implied consent, (where a pleading affirmatively states facts which demonstrate that the suit is barred), an exception may be used to test the pleadings. *Hubler v. City of Corpus Christi,* 564 S.W.2d 816, 823 (Tex. Civ.App.—Corpus Christi 1978, writ ref'd n. r. e.); 1 McDonald, Texas Civil Practice, Section 7.19 (1971). The record before us demonstrates that none of the exceptions exempting a defendant from specially pleading the affirmative defense of limitations applies to the case before us and no such exception has been urged by appellant in spite of ample opportunity to so do. We conclude and hold that appellant has waived his right to rely on the limitations defense in this case.

Appellant next argues that illegitimate children born prior to September 1, 1975, (the effective date of the Family Code

amendments establishing involuntary paternity procedures) have no judicially enforceable remedy to establish their paternity. This argument virtually ignores the United States Supreme Court decision of *Gomez v. Perez*, 409 U.S. 535, 93 S.Ct. 872, 35 L.Ed.2d 56 (1973) and every other involuntary paternity suit brought for the purpose of establishing the paternity of children born prior to September 1, 1975, in Texas after that decision. In *Gomez*, the Supreme Court stated:

"(A) State may not invidiously discriminate against illegitimate children by denying them substantial benefits accorded children generally. We therefore hold that once a State posits a judicially enforceable right on behalf of children to needed support from their natural fathers there is no constitutionally sufficient justification for denying such an essential right to a child simply because its natural father has not married its mother . . . We recognize the lurking problems with respect to proof of paternity. Those problems are not to be lightly brushed aside, but neither can they be made into an impenetrable barrier that works to shield otherwise invidious discrimination." *Gomez*, supra at 538, 93 S.Ct. at 875 (citations omitted).

In Texas, both at common law and under the statutes of the State, a natural father has a continuing and primary duty to support his legitimate children. See *Lane v. Phillips*, 69 Tex. 240, 6 S.W. 610, 611 (1887); Tex.Family Code § 4.02 (1970). Considering the effect of the *Gomez* decision, this Court has stated:

"The right of an illegitimate child to obtain support from his or her natural father has been recognized since the United States Supreme Court decision of *Gomez v. Perez.*" *Alvarado v. Gonzalez*, 552 S.W.2d 539 (Tex.Civ.App.—Corpus Christi 1977, no writ).

A necessary incident of an illegitimate child's right to seek support from his or her natural father is some sort of initial proof that the alleged father is the biological father of the illegitimate child. Implicit in the *Gomez* decision, therefore, is the notion that an illegitimate child has a common law right to institute a proceeding for the purpose of showing that the alleged father is his biological father as a necessary requisite to establish "a judicially enforceable right" otherwise accorded to legitimate children generally.

In enacting Section 13.01 et seq. of the Family Code, the legislature has attempted to provide a practical framework within which the rights of the alleged father as well as the rights of the illegitimate child are protected. The courts, however, have judicially interpreted these specific provisions to apply only to children who were born on or after the effective date, September 1, 1975. See *Alvarado v. Gonzalez*, 552 S.W.2d 539 (Tex.Civ.App.—Corpus Christi 1977, no writ). We find that where courts have permitted suits to establish the paternity of a child born prior to the effective date of Section 13.01, such suits have generally followed the guidelines set forth in the Family Code as amended. This statutory procedure (set out in Section 13.01 et seq.) is but a convenient method, in such a case, for the parties and the courts to establish paternity vel non and does not necessarily mean that the entire article is being given retroactive effect by the courts of this state.

Appellant next contends that the express provisions of Section 13.01 of the Texas Family Code evidence the legislature's express intent that no suit should be brought to establish the parent-child relationship more than one year after the birth of the child or the effective date of the statute, whichever occurs later. This section 13.01 states:

"A suit to establish the parent-child relationship between a child who is not the legitimate child of a man and the child's natural father by proof of paternity must be brought before the child is one year old, or the suit is barred."

This specific provision has been held to be inapplicable to a child born prior to September 1, 1975, the effective date of the involuntary paternity proceeding provisions. *Alvarado v. Gonzalez,* 552 S.W.2d 539 (Tex. Civ.App.—Corpus Christi 1977, no writ). Also *Texas Department of Human Resources v. Delley,* 581 S.W.2d 519 (Tex.Civ. App.—Dallas 1979, writ filed); *State Department of Public Welfare v. Martin,* 562 S.W.2d 9 (Tex.Civ.App.—Eastland 1978, no writ).

We are of the opinion that a suit to establish the parent-child relationship of a child born prior to September 1, 1975, must be governed by common law principles since there are no express statutory provisions governing that situation. The applicable statute of limitations, if any, must be sought outside of the Family Code. Appellant has not challenged appellee's suit on the basis that it was barred by the four year or any other specific statute of limitations. Accordingly, the applicability of any other limitations statute is not before us. Compare *Texas Dept. of Human Resources v. Delley,* 581 S.W.2d 519 (Tex.Civ.App.— Dallas 1979, writ filed).

After arguing that the involuntary paternity provisions contained in the Family Code, as amended, are inapplicable to this case, appellant takes the contrary position in his remaining point of error by complaining, in substance, that the trial court committed reversible error by failing to order a pre-trial hearing pursuant to Section 13.04, which provides, in relevant part, as follows:

"(a) After completion of the blood tests, the court shall order all parties to appear, either in person or by counsel, at a pre-trial conference. The court shall call its appointed examiners to testify in person or by deposition about their tests and findings. A party may call other qualified examiners of blood tests to testify."

Appellant's complaints border on being frivolous. On July 8, 1977, approximately one and one half years prior to the time this case was heard on the merits, the trial judge entered an order requiring appellant, appellee, and the child in question to submit to blood tests conducted under the direction of Dr. Jerome L. Silverman. Dr. Silverman made the results of these tests known to the court and to the parties in a letter dated July 18, 1977. Although at least two pre-trial hearings were conducted during the intervening months, at no time did the appellant request that a pre-trial hearing be held pursuant to Section 13.04. During one of these hearings, the trial judge asked appellant's attorney if he had any other matters that he wanted to bring to the court's attention prior to the trial. Appellant's attorney replied: "Not that I know of." Appellant cannot now be heard to complaint that a pre-trial hearing pursuant to Section 13.04 was not held when appellant did not even request such a hearing. Compare: *Shockome v. Hernandez,* 587 S.W.2d 535 (Tex.Civ.App.—Corpus Christi 1979).

Appellant later filed a motion in limine seeking to exclude the testimony concerning any of the blood tests or their results. This motion was overruled by the trial court. During the course of the trial, Dr. Silverman's aforementioned letter was introduced into evidence and his testimony and the testimony of other witnesses involved in the blood testing was admitted into evidence without objection. Appellant's complaint is without merit. He failed to object to the evidence such motion sought to exclude at the time it was offered into evidence during the trial. *Hartford Accident & Indemnity Co. v. McCardell,* 369 S.W.2d 331 (Tex.Sup.1963).

The judgment of the trial court is AFFIRMED.