**TEXAS DEPARTMENT OF HUMAN RESOURCES, Appellant,**

v.

**Juan HERNANDEZ, Appellee.**

No. 1546.

Court of Civil Appeals of Texas, Corpus Christi.

Jan. 31, 1980.

Rehearing Denied March 13, 1980.

Richard D. Hatch, County Atty., Sinton, for appellant.

John H. Flinn, Sinton, for appellee.

## OPINION

BISSETT, Justice.

The Texas Department of Human Resources [TDHR] sued Juan Hernandez [defendant] under the provisions of Section 13.01 et seq. of the Texas Family Code to establish a parent-child relationship between defendant and an illegitimate child whose mother had assigned support rights to TDHR.[1] Defendant filed a motion for summary judgment asserting that the suit was barred by the statute of limitations set forth in Section 13.01 of the Texas Family Code, which provides that a suit to establish the parent-child relationship between an illegitimate child and the alleged natural father must be brought within one year from the birth of the child.[2] The trial court granted the motion for summary judgment, it being undisputed that, while the child was born March 30, 1976, suit was not filed until March 6, 1979. We affirm.

Disposition of this cause requires us briefly to review the history of paternity suits, and support rights of illegitimate children in the State of Texas. Prior to January 17,

---

1. This suit is distinguishable from a bastardy, or filiation, suit. While the successful prosecution of a suit to establish the parent-child relationship pursuant to Section 13.01 et seq. of the Family Code would entail legitimation of the child, Tex.Family Code Ann. §§ 12.02(c), 13.09 (1975) (Supp.1980), filiation would not necessarily import legitimacy. *See Rodrigues v. Rodrigues*, 286 Mass. 77, 190 N.E. 20 (1934); *Waddell v. State*, 235 Ark. 293, 357 S.W.2d 651 (1962).

2. Section 13.01. Time Limitation of Suit

"A suit to establish the parent-child relationship between a child who is not the legitimate child of a man and the child's natural father by proof of paternity must be brought before the child is one year old, or the suit is barred." Tex.Family Code Ann. § 13.01 (Supp.1980).

1973, the law in Texas imposed duties on fathers to support legitimate children but denied that right to illegitimates. Compare *Gully v. Gully*, 111 Tex. 233, 231 S.W. 97 (1921) with *Home of the Holy Infancy v. Kaska*, 397 S.W.2d 208 (Tex.Sup.1966). This law was invalidated upon constitutional grounds by the United States Supreme Court on January 17, 1973, in *Gomez v. Perez*, 409 U.S. 535, 93 S.Ct. 872, 35 L.Ed.2d 56 (1973). In *Gomez* the court concluded that Texas law violated the constitutional guarantee of equal protection, stating:

> "Once a State posits a judicially enforceable right on behalf of children to needed support from their natural fathers there is no constitutionally sufficient justification for denying such an essential right to a child simply because its natural father has not married its mother." (409 U.S. at 538, 93 S.Ct. at 875).

Implicit in the *Gomez* decision was the notion that an illegitimate has a common law right to institute a proceeding for the purpose of showing that the alleged father is the biological father as a necessary requisite to establish a judicially enforceable right otherwise accorded to legitimate children generally. *Wynn v. Wynn*, 587 S.W.2d 790 (Tex.Civ.App.—Corpus Christi 1979, no writ).

After *Gomez* the legislature enacted Title 2 of the Family Code governing the parent-child relationship. Tex.Laws 1973, ch. 543 at 1411. Understandably, in drafting Title 2, the legislature considered comprehensive provisions regulating the legal aspects of children born out of wedlock. Despite the *Gomez* decision, however, such comprehensive provisions were not passed. Instead, the legislative "response" to *Gomez* was found in Chapter 13 of the Family Code which provided for voluntary legitimation proceedings. Smith, Commentary on Title 2 of the Family Code, 5 Tex.Tech.L.Rev. 389, 418 (1974). It was later held, however, that when the legislature provided judicial relief against the father on behalf of a legitimate child for support, due to *Gomez* it necessarily provided the same relief on behalf of an illegitimate child. *In the Interest of R___ V___ M___*, 530 S.W.2d

921 (Tex.Civ.App.—Waco 1975, no writ). Thus, after the effective date of Title 2, which was January 1, 1974, illegitimate children had judicially enforceable support rights, whether by common law or by statute, against their biological fathers. *Gomez*, supra; *Wynn*, supra; *In the Interest of R___ V___ M___*, supra.

Remaining in a state of flux, the statutory rights of illegitimates were brought into sharper focus by amendments to Chapter 13 of Title 2 of the Family Code, the effective date of which was September 1, 1975. The result was the present involuntary legitimation proceeding found in Sections 13.01 through 13.09 of the Family Code. By enacting Section 13.01 et seq. of the Family Code, the legislature attempted to provide a practical framework within which the rights of the alleged father as well as the rights of the illegitimate child are protected. *Wynn v. Wynn*, supra. The United States Supreme Court said in *Gomez* that there are

> ". . . lurking·problems with respect to proof of paternity. Those problems are not to be lightly brushed aside, but neither can they be made into an impenetrable barrier that works to shield otherwise invidious discrimination."

Section 13.01 of the Family Code, which requires that paternity suits be filed at least one year from the birth of the child, first came under judicial scrutiny with regard to the issue of retroactivity. In *Alvarado v. Gonzales*, 552 S.W.2d 539 (Tex.Civ. App.—Corpus Christi 1977, no writ), this Court held that Section 13.01 was intended to apply only to those suits to establish the parent-child relationship for illegitimate children born after September 1, 1975, the effective date of the statute. We also held that retroactive application of the limitation statute would violate the constitutional rights of illegitimate children born before the statute took effect.

In *Alvarado* we were not called upon to determine the constitutionality of Section 13.01 as it applies to children born after the effective date of the statute. This issue did

not come before an appellate court until *Texas Department of Human Resources v. Chapman*, 570 S.W.2d 46 (Tex.Civ.App.—Dallas 1978, writ ref'd n. r. e.). In *Chapman* the Court held that the statute of limitations for initiating a paternity suit did not deprive an illegitimate child of his constitutional rights to due process and equal protection under either the United States Constitution or the Texas Constitution. In reaching its holding, however, the court expressly reserved judgment on whether the various tolling provisions set forth in the Texas Revised Civil Statutes are applicable to extend the period within which a paternity suit may be filed. 570 S.W.2d at 49, n. 3.

The issue of tolling was both considered and decided shortly after *Chapman* in *Texas Department of Human Resources v. Delley*, 581 S.W.2d 519 (Tex.Civ.App.—Dallas 1979, writ ref'd n. r. e.). In *Delley* the Court was faced with a suit brought on behalf of a child born before the effective date of Section 13.01. Finding itself in agreement with this Court's decision in *Alvarado*, the Court held that Section 13.01 only applies to children born after September 1, 1975. The Court next held that the proper statute of limitations for suits brought on behalf of children born before the effective date of Section 13.01 is the four-year statute of limitations provided in Tex.Rev.Civ.Stat.Ann. art. 5529 (1958). Finally, the *Delley* court held that the four-year statute of limitations is tolled during the minority of the child as a matter of public policy and by virtue of Tex.Rev.Civ. Stat.Ann. art. 5535 (Supp.1978–79), the general tolling statute.

■ TDHR's points of error on appeal in the case at bar present to this Court the issues of whether Section 13.01 is constitutional and, if so, whether it is tolled during the minority of a child born after the effective date of the law. Regarding the constitutionality of Section 13.01, we, as an intermediate appellate court choose to follow *Chapman*, since a writ or error was refused "no reversible error" by the Texas Supreme Court. TDHR's constitutional arguments

in the case at bar are virtually the same as its arguments made in *Chapman*. Section 13.01 is not unconstitutional. We overrule the points of error dealing with alleged violations of equal protection and due process.

We next turn to the argument of TDHR that Section 13.01 should be tolled during the minority of the child. The action at bar was brought by TDHR, pursuant to an assignment to it by the child's mother of her rights to child support. This assignment was made pursuant to Tex.Rev.Civ.Stat. Ann. art. 695c, § 18–B(c) (Supp.1979). Nevertheless, it is a "suit affecting the parent-child relationship" because the suit was brought under the Family Code to legitimate the child in order to require support by the biological father. Tex.Family Code Ann. § 11.01(5) (1975). It may be brought by "any person with an interest in the child, including the child (through a representative authorized by the court), any agency of the state . . . and any authorized agency." Tex.Family Code Ann. § 11.03 (1975). Since, however, the essential concern in any case is the best interest of the child, Tex.Family Code Ann. § 14.07(a) (1975), we may assume that, although the action at bar was brought by TDHR, the real party in interest is the child. See *Texas Dept. of Human Resources v. Delley*, supra.

■ Although the child is the real party in interest in this action, however, it would be both illogical and unreasonable for this Court to hold that Section 13.01 is tolled on account of minority. The purpose of this lawsuit is to establish the duty of the biological father to support a child fathered by him and born out of wedlock. Tolling the statute of limitations would simply allow the child to bring suit for child support once he is no longer a child. Furthermore, tolling the statute of limitations would but constitute a disingenuous way of holding Section 13.01 unconstitutional, a conclusion we are not willing to reach in light of the Supreme Court's decision to refuse a writ of error in *Chapman* for want of reversible error. Moreover, we note that Section 13.-

01 is an integral part of the same statutory scheme which created the involuntary legitimation proceeding. Where a statute creates a right and also incorporates a limitation upon the time within which the suit is to be brought, the limitation qualifies the right so that it becomes a part of the substantive law rather than the procedural law. *Franco v. Allstate Ins. Co.*, 505 S.W.2d 789 (Tex.Sup.1974); *Francis v. Herrin Trans. Co.*, 432 S.W.2d 710 (Tex.Sup.1968); *State of California v. Copus*, 158 Tex. 196, 309 S.W.2d 227 (1958). Thus, it would be highly improper for this Court to toll, and in effect, emasculate, what is obviously a substantive part of Chapter 13 of the Family Code. TDHR's last point of error, therefore, is overruled.

There is a vast difference between the duties imposed upon a biological father of an illegitimate child and the rights acquired by the child in a successful suit for legitimation, and those duties imposed and rights acquired in a suit for child support only. The points of error before us in this appeal relate solely to Chapter 13 of the Family Code, although, arguendo, the child may have a common law right for support because, when the legislature provided a judicial right against the biological father on behalf of a legitimate child for support [Tex.Family Code Ann. §§ 4.02, 12.04 and 14.05 (1975 and 1980 Supp.)], it *necessarily* provided the same relief on behalf of an illegitimate child. See *Wynn v. Wynn*, supra; *In the Interest of R___ V___ M___*, supra. The only difference is that the illegitimate child must first prove biological fatherhood.

We cannot decide this case on legal theories which are not asserted by the appellant, are not based upon proper pleadings and are not before this Court on proper points of error. Therefore, insofar as this appeal is concerned, it is immaterial whether a common law cause of action for child support which stops short of actual legitimation exists on behalf of an illegitimate child. That issue was not before the trial court, is not before us, and we express no opinion thereon.

The judgment of the trial court is AFFIRMED.