In the Interest of Jeremey Alan MILLER, a Child.

No. 18328.

Court of Civil Appeals of Texas, Fort Worth.

July 24, 1980.

Rehearing Denied Sept. 11, 1980.

Crampton, Crampton & Estrada, and Holly Crampton, Wichita Falls, for appellant.

Roy T. Sparkman, Wichita Falls, for appellee.

## OPINION

SPURLOCK, Justice.

This is an appeal from a summary judgment granted defendant in a paternity action involving a constitutional challenge to the one year statute of limitations found in Tex.Family Code Ann. sec. 13.01 * (Supp. 1980). That statute is as follows: Time Limitation of Suit: "A suit to establish the parent–child relationship between a child who is not the legitimate child of a man and the child's natural father by proof of paternity must be brought before the child is one year old, or the suit is barred."

We reverse and remand.

Suit was brought by Brenda Miller, the natural mother, in the interest of Jeremey Alan Miller. Jeremey was born May 21, 1978. Brenda Miller filed suit on October 11, 1979, alleging that respondent was the natural father of the child. Respondent answered and pled limitations under sec. 13.01 as a bar. The trial court sustained the plea, ordering petitioner's suit dismissed with prejudice.

On appeal Ms. Miller attacks the constitutionality of sec. 13.01 under Article 1, Sections 3 and 19 of the Texas Constitution, Fifth and Fourteenth Amendments to the United States Constitution and the Equal Rights Amendment to the Texas Constitution, alleging denial of due process and unequal protection under the law.

We will initially discuss whether the one year statute of limitations set forth in sec. 13.01 invidiously discriminates between legitimate and illegitimate children so as to deny them equal protection of the law.

At early common law an illegitimate child was considered nullius filius–the son of no one–of no mother; of no father. He was not entitled to support from anyone. Much has changed since then. Modern society shrinks from the application of the Old Testament (Exodus 20:5) commandment "visiting the iniquity of the fathers upon the children ..." as we progress to the more humanitarian view that there are no illegitimate children, only illegitimate parents. As the Court observed in *Weber v. Aetna Casualty & Surety Co.*, 406 U.S. 164, 175, 92 S.Ct. 1400, 1406, 31 L.Ed.2d 768 (1972):

"The status of illegitimacy has expressed through the ages society's condemnation of irresponsible liaisons beyond the bonds of marriage. But visiting this condemnation on the head of an infant is illogical and unjust. Moreover, imposing disabilities on the illegitimate child is contrary to the basic concept of our system that legal burdens should bear some relationship to individual responsibility or wrongdoing. Obviously, no child is responsible for his birth and penalizing the illegitimate child is an ineffectual–as well as an unjust–way of deterring the parent."

The reason for the trend is clear as society becomes progressively more aware that children, all children, deserve proper care, comfort, and protection. The stigma of illegitimacy imposes its own burdens without adding additional shackles in the form of legal impediments to the securing of the health, care, and welfare of children.

We therefore start with the premise that illegitimate children are not "nonpersons." They are human; alive; legally innocent at birth; and fully deserving of the aspirations our society bestows on their "legitimate" counterparts. They are "persons" within the meaning of the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution.

The classification created by this statute is constitutionally suspect in that it creates separate classes among individuals similarly situated. Implicitly, it recognizes the common law right of legitimates to support from their parents during the entire course of their minority. Equally so, it recognizes

* All references to sec. 13.01 are to Tex.Family Code Ann.

the same right in illegitimates, provided, however, that they act within the first year of their existence to establish paternity. [Paternity suits are a prerequisite to child support for an illegitimate child. *Texas Dept. of Human Resources v. Delley*, 581 S.W.2d 519, 522 (Tex.Civ.App.–Dallas 1979, writ ref'd n. r. e.).] Failure to so act under sec. 13.01 results in illegitimates being forever barred from the right to sue their natural father for child support, a limitation their legitimate counterparts do not share.

Appellant urges that there exists no similar limitation on the right of an illegitimate to sue his natural mother for support. We find that the statute assumes too much in concluding that every child will have knowledge of the identity of its natural mother. The illegitimate may sue to establish maternity (a first step to support) throughout the entire course of his minority. This obviously results in exposing the "illegitimate" mother to greater legal liability than the "illegitimate" father. This court will not indulge in the reckless, romantic notion that mothers are more caring and loving than fathers. While that may be true, it is not a distinction for the judicial system to make. We do conclude that women have every bit as much interest in avoiding "spurious claims" as men; that they would suffer the same difficulties in defending a suit brought after the one year expiration of the statute of limitations.

Speaking in regard to classifications involving illegitimates the Court in *Levy v. Louisiana*, 391 U.S. 68, 71, 88 S.Ct. 1509, 1511, 20 L.Ed.2d 436 (1968), noted that "[w]hile a State has broad power when it comes to making classifications, it may not draw a line which constitutes an invidious discrimination against a particular class. Though the test has been variously stated, the end result is whether the line drawn is a rational one."

Appellants urge that sec. 13.01 is based upon the "suspect classification" of illegitimacy. Like race and national origin, they assert, illegitimacy is a characteristic determined solely by accident of birth; it is a condition beyond the infant's control; a status that subjects them to a stigma of inferiority and one which denies them access to the benefits accruing to their legitimate counterparts by way of common law.

The Supreme Court in *Levy* held that under the Equal Protection Clause of the Fourteenth Amendment a State may not create a right of action in favor of children for the wrongful death of a parent and exclude illegitimate children from the benefit of such a right. In *Weber* the Court found that illegitimate children may not be excluded from sharing equally with other children in the recovery of workmen's compensation benefits for the death of their parent.

Under these decisions, a State may not invidiously discriminate against illegitimate children by denying them substantial benefits accorded children generally.

The primary constitutional authority in the area of paternity law is *Gomez v. Perez*, 409 U.S. 535, 93 S.Ct. 872, 35 L.Ed.2d 56 (1973). In Texas, both at common law and under the statutes of the State, the natural father has a continuing duty to support his legitimate children. *Lane v. Phillips*, 69 Tex. 240, 243, 6 S.W. 610, 611 (1887); Tex. Family Code Ann. sec. 4.02 (1979). Though this duty extends beyond dissolution of the marriage [Tex.Family Code Ann. sec. 14.05; *Hooten v. Hooten*, 15 S.W.2d 141 (Tex.Civ. App.–Texarkana), *aff'd at* 120 Tex. 538, 40 S.W.2d 52 (1931)]; is enforceable on the child's behalf in civil proceedings; is the subject of criminal sanctions [Tex.Penal Code Ann. sec. 25.05 (1974), dealing with criminal nonsupport]; and exists despite the fact that the father may not have custody [*Hooten*], prior to *Gomez*, Texas did not recognize any enforceable duty on the part of the biological father to support his illegitimate child. At Texas common law illegitimate children, unlike their legitimate counterparts, had no legal right to support from their fathers. *Home of Holy Infancy v. Kaska*, 397 S.W.2d 208 (Tex.1965); *Bjorgo v. Bjorgo*, 391 S.W.2d 528 (Tex.Civ.App.– Amarillo), *reversed on other grounds*, 402 S.W.2d 143 (1966).

In response to this unequal apportionment of rights, the Court in *Gomez*, 409 U.S. at p. 538, 93 S.Ct. at p. 875 held that "once a State posits a judicially enforceable right on behalf of children to needed support from their natural fathers there is no constitutionally sufficient justification for denying such an essential right to a child simply because its natural father has not married its mother. For a State to do so is 'illogical and unjust.'"

The Texas response was sec. 13.01 which appellant alleges to be unconstitutional. At least two Texas courts of civil appeals have expressly upheld the constitutionality of the statute. In *Texas Dept. of Human Resources v. Chapman*, 570 S.W.2d 46, 49 (Tex. Civ.App.–Dallas 1978, writ ref'd n. r. e.), the court dispensed with the requirements of *Gomez* when it concluded that statutes of limitations, such as sec. 13.01, "relate to remedies, and do not destroy fundamental rights." Noting that *Gomez* mandated that a state may not "absolutely foreclose" the right of an illegitimate child to receive support from its natural father, the Dallas court found the one year "window" sufficient to satisfy constitutional requirements. *Texas Dept. of Human Resources v. Hernandez*, 595 S.W.2d 189 (Tex.Civ.App.—Corpus Christi 1980, no writ) expressly based on *Chapman*, follows the same logic.

It is our opinion that the Dallas court incorrectly applied *Gomez*.

Two questions arise in construing the sec. 13.01 statute of limitations. Is a reasonable time, from the standpoint of the infant, accorded for the determination of his or her paternity? If not, the limitation will too soon foreclose an important right, resulting in a denial of due process. The second question is more pressing. Does the limitation, by clearly discriminating between legitimates and illegitimates, violate the constitutional guarantee of equal protection under the law?

■ We agree with the Dallas court that statutes of limitations pertain to remedies and not to substantive rights. We do not conclude that, as a result, such limitations are immune from bringing about unconsti-

tutional results. And we are mindful of the mandate in *Gomez* where the Court observed: "We recognize the lurking problems with respect to proof of paternity. Those problems are not to be lightly brushed aside, but neither can they be made into an impenetrable barrier that works to shield otherwise invidious discrimination." 409 U.S. 535, 538, 93 S.Ct. 872, 875, 35 L.Ed.2d 56.

We note a more recent decision by the Dallas court where it dealt with an illegitimate born *prior* to the passage of the statute in question. Concluding that sec. 13.01 was not applicable due to ex post facto considerations, the Dallas court in *Delley, supra* at 522, applied the four year general statute of limitations found under Tex.Rev. Civ.Stat.Ann. art. 5529 (1958). In response to appellant's assertion of Tex.Rev.Civ.Stat. Ann. art. 5517 (1958) providing that the State shall not be barred by any statute of limitations, the court agreed but noted that as more than four years had passed between the accrual of the action and its transfer to the State, the right to assert the limitation had vested in the defendant.

Yet despite the age of the illegitimate (9 years), and the father's assertion of limitations, the Dallas court, in light of *Gomez*, found the limitation tolled under Tex.Rev. Civ.Stat.Ann. art. 5535 (Supp.1980) due to the minority of the child. The Dallas court stated at p. 522 "As a matter of public policy, we doubt that fathers of illegitimate children should be absolved from the duty of paying child support merely because a paternity suit has not been filed within four years of the birth of the child." The court noted that the state has a compelling interest in assuring that the primary obligation for support of illegitimate children falls on both natural parents rather than on the taxpayers.

We note that the Dallas court found an undefined, yet implicit right in illegitimates to support, a right emanating from the combined sources of the common law right of legitimates to support and the mandate of *Gomez* that States interpose no impenetrable barriers to the vesting of the same right in illegitimates. We agree.

We also agree with *Kaur v. Singh Chawla*, 11 Wash.App. 362, 522 P.2d 1198, 1199 (1974) dealing with a similar statute in which the court stated: "It is sufficient here to note that while Washington has denied an *illegitimate* child a common law right to support from its putative father, ... it has recognized a *legitimate* child's common law right to support from its parents. [Citing cases.] The United States Supreme Court has condemned similar discrimination, statutorily imposed, as being an unconstitutional denial of equal protection. ... Since Washington, by common law, 'posits' a right of *legitimate* children to support by their natural fathers which is as 'judicially enforceable' as a statutory right, we conclude that illegitimate children are also entitled to a 'judicially enforceable right ... to needed support from their natural fathers ...' ". In *Kaur* the court construed the statute as constitutional but only by determining it *not* to be the exclusive method by which an illegitimate could bring a filiation proceeding.

The New Mexico Supreme Court, applying *Gomez*, dealt with a two year statute of limitations. In *Stringer v. Dudoich*, 92 N.M. 98, 583 P.2d 462, 463, 464 (1978), the New Mexico court held that the limitation applied to the mother but not the child. "Illegitimate children are entitled to the same support rights as legitimate children. ... In New Mexico there is no time limitation on the right of the child born in wedlock to require the natural father to support him. ... If there is no limitation on the right of a legitimate child to seek support from his parent, then there can be no limitation on the same right for an illegitimate child."

The Kansas Supreme Court in *Huss v. DeMott*, 215 Kan. 450, 524 P.2d 743 (1974), dealt with a statute remarkably similar to our own. Kan.Stat.Ann. 38–1104 (1973) stated: "No action to determine paternity shall be instituted more than one year after the birth of the child whose paternity is in issue." Noting that the determination of paternity was the first step by which an illegitimate could establish his right to support the court construed the statute as relating to the mother's cause of action only, holding it did not limit the time in which the illegitimate child may bring a non–statutory action.

█ Mindful of *Gomez* and the above state Supreme Court decisions, which we view as advisory, we find sec. 13.01 to be unconstitutional as it applies only to suits for paternity with no provisions being made for suits for maternity.

Additionally, we find the statute unconstitutional in that it creates two classes, legitimates and illegitimates, invidiously discriminating against the latter class. To hold otherwise would allow the illegitimate's rights to support to be waived by the mother. Not only would this result in unequal protection under the law, as legitimates are not subject to the same ultimate waiver and foreclosure of their rights to support by third persons, but such a denial would violate the illegitimate's constitutional rights to due process. Nullus jus alienum foris facere potest. The law does not permit one to forfeit another's rights. The right of an illegitimate child to assert a claim for parental support is too fundamental to permit its forfeiture by the mother's failure to timely institute a filiation proceeding.

█ We are aware of the concern forwarded by appellee regarding the rights of putative fathers to be free from stale or fraudulent claims. Yet we note this action is based on the father's obligation to support his child. That obligation extends to legitimate and illegitimate children alike. The obligation to support illegitimate children arises from the same source as the obligation to support legitimate children; the public policy of this State. For illegitimates, paternity must first be established in order to enforce the obligation to support. This action does not create a duty; it merely provides the machinery for the enforcement of a duty already existing. Liability for support attaches only as part of the responsibility for having brought the child into being.

We hold sec. 13.01 unconstitutional. We reverse and remand.