**Reversed and Remanded and Opinion filed December 6, 2012.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-11-00856-CV

---

**SHARON ANN GRIBBLE, INDIVIDUALLY AND IN HER CAPACITY AS GUARDIAN OF THE PERSON AND ESTATE OF MICHAEL RAY GRIBBLE, Appellants,**

**V.**

**BRENT ALLEN LAYTON, Appellee.**

---

**On Appeal from the 306th District Court**
**Galveston County**
**Trial Court Cause No. 09FD0426**

---

## O P I N I O N

Appellant Sharon Ann Gribble, individually and in her capacity as guardian of the person and estate of Michael Ray Gribble, her disabled adult son, sued Michael's alleged biological father, appellee Brent Allen Layton, for a determination of parentage and child support. Layton moved to dismiss the suit on statute-of-limitations grounds and, alternatively, on the grounds that Sharon lacked standing to pursue Michael's claims on

his behalf. The trial court granted Layton's motion, concluding that the statutory limitations provision found in the 1983 version of former Family Code section 13.01 barred the suit. We reverse and remand.

## I

Michael Ray Gribble was born on December 10, 1972. Michael is mentally incompetent and also suffers from physical disabilities. Sharon filed this action in February 2009, when Michael was thirty-six years old. Sharon's original petition in a suit affecting the parent-child relationship reflected that she brought the suit individually and as the court-appointed guardian of Michael's person. In an amended petition, Sharon alleged that she brought the suit individually and in her capacity as the court-appointed guardian of Michael's person and estate.[1]

In her pleadings, Sharon alleged that Michael requires substantial care and personal supervision because of a mental or physical disability and he is not capable of self-support. Sharon requested an order adjudicating Layton to be Michael's father and requiring Layton to provide child support and medical support for Michael.

Layton responded to Sharon's original petition with a general denial, which he later amended to assert that Sharon's action was barred by the statute of limitations. He also asserted that retroactive child support was barred by Family Code section 154.131(f) and "any award of child support would not be in the child's best interest because of the loss of governmental benefits that would result."

In June 2011, a hearing was held before the trial court. At the hearing, Sharon testified that she was Michael's mother and Layton was his father. Sharon and Layton never married. Sharon testified that when Michael was about three months old, she told Layton about his son.

---

[1] Sharon obtained a court-appointed guardianship over Michael's person and estate in response to a motion to dismiss filed by Layton, in which Layton argued that the case should be dismissed because "[Michael's] claim for child support can only be asserted by a guardian of the estate" and therefore Sharon lacked standing to pursue this action.

2

Sharon explained that Michael was sick when he was born, and he was diagnosed with mild mental retardation at the age of four or five months. Sharon testified that Michael also suffers from epilepsy, and when he was six years old he began having seizures that have worsened over time. Several years ago, doctors performed brain surgery on Michael, and Sharon stated that as a result his seizures have lessened. Sharon also testified that Michael is incapable of supporting or taking care of himself and it is necessary for her to supervise him at all times. Michael receives Social Security disability insurance and has received additional assistance through the state. Sharon also testified regarding her finances and Michael's expenses.

On cross-examination, Sharon acknowledged that Michael had previously worked part-time at a Sam's Club store retrieving carts from the parking lot. She agreed that he was able to perform this job "effectively and satisfactorily" for about eight years until he was let go in 2000. She also testified that a government program made the job at Sam's Club possible, and if it had not been for that government program, Michael would have been unable to obtain employment. Sharon acknowledged that she had the option to place Michael in a residential-care facility to reduce her expenses, but she stated that she would never do that. She further stated that she believed it was in Michael's best interest to live with her.

Daniel Armond, the president and C.E.O. of Golden Rule Services, Inc., a private provider for developmentally disabled persons, also testified. Golden Rule offers residential-care facilities as well as activities and services for nonresidents. Armond explained that Michael participates in a state-funded program called "Home and Community Based Services," which provides services and support to people with developmental disabilities. Armond testified that the state categorizes Michael as a disabled person. In Armond's opinion, Michael is incapable of self-support. Armond explained that in 1991, when Michael was eighteen, he was given a comprehensive assessment to evaluate his need for services. The report of the assessment reflected that Michael had mild mental retardation with a seizure disorder, and it was recommended

that he be eligible for services to provide assistance and independent-living-skills and social-skills training.[2] According to the report, Michael's condition began at birth.

Layton testified concerning his income, investments, and employment status. Layton denied that Sharon told him about Michael when Michael was an infant. According to Layton, he did not know of Michael's existence until Michael was about twenty years old and was participating in Special Olympics. After that, Layton sometimes socialized with Michael, but when Sharon "started filing lawsuits" around 1994, he felt there was a "hostile environment" in her home and he no longer felt welcome to contact Michael. According to Layton, he had always been warm and friendly to Michael, even though he believed he was a victim of circumstances and had been made to be the "bad guy." When asked if he would provide support for Michael, Layton stated that he was willing to provide Michael with transportation so that he could attend activities with others his age. Layton also testified that he did not believe that he was Michael's father, and he complained that there was a "rush job on the DNA."[3]

When Michael was called to testify, the trial judge first questioned him about the difference between a lie and the truth and admonished the attorneys to proceed "very gently." Michael then answered a few questions from each party. Michael testified that he enjoyed living with his mother and he knew his address. He explained that sometimes his mother gave him money to buy his own clothes. He enjoyed participating in Special Olympics. Michael demonstrated that he could spell his first name, and he testified that he could read and type on a typewriter. He stated that he liked to walk his dog in his neighborhood and he has friends in the neighborhood. Michael testified that he did not currently participate in the activities provided at Golden Rule, but he would like to do so. Michael also identified Layton in court as his father and said that he liked to spend time with him.

---

[2] A copy of the report and related documents was admitted into evidence.

[3] According to DNA-testing results admitted at trial, Layton could not be excluded as Michael's biological father, and the probability of his paternity was 99.96%.

4

At the conclusion of the hearing, Layton's counsel moved for dismissal on statute-of-limitations grounds, and also argued that Sharon lacked standing to assert claims on Michael's behalf. The trial court took the matters under advisement.

On June 30, 2011, the trial court signed a final judgment granting Layton's motion to dismiss and ordering that Sharon take nothing by her suit in either her individual capacity or in her capacity as Michael's guardian. In the judgment, the trial court specifically referred to Layton's argument that Sharon's suit was "barred by the statute of limitation incorporated within former Tex. Fam. Code section 13.01(a), as enacted in 1983." Sharon filed a motion for new trial, which the trial court denied. This appeal followed.

## II

Because is it a matter of jurisdiction, we first address Layton's contention that Sharon lacks standing to pursue a paternity suit on Michael's behalf.

A court has no jurisdiction over a claim made by a plaintiff who lacks standing to assert it. *DaimlerChrysler Corp. v. Inman*, 252 S.W.3d 299, 304 (Tex. 2008). Standing is a component of subject-matter jurisdiction, and subject-matter jurisdiction is essential to the authority of a court to decide a case. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 443 (Tex. 1993). Standing is never presumed, cannot be waived, and can be raised for the first time on appeal. *Tex. Ass'n of Bus.*, 852 S.W.2d at 444–45. We review standing under the same standard by which we review subject-matter jurisdiction generally. *Id.* at 446. Whether the trial court has subject-matter jurisdiction is a question of law that we review de novo. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004).

Layton's argument is based on his interpretation of Family Code section 160.602, titled, "Standing to Maintain Proceeding," which provides:

(a) Subject to Subchapter D and Sections 160.607 and 160.609[4] and except

---

[4] Subchapter D and sections 160.607 and 160.609 do not apply here.

as provided by Subsection (b), a proceeding to adjudicate parentage may be maintained by:

(1) the child;

(2) the mother of the child;

(3) a man whose paternity of the child is to be adjudicated;

(4) the support enforcement agency or another government agency authorized by other law;

(5) an authorized adoption agency or licensed child-placing agency;

(6) *a representative authorized by law to act for an individual who would otherwise be entitled to maintain a proceeding but who is deceased, is incapacitated, or is a minor*;

(7) a person related within the second degree by consanguinity to the mother of the child, if the mother is deceased; or

(8) a person who is an intended parent.

(b) After the date a child having no presumed, acknowledged, or adjudicated father becomes an adult, a proceeding to adjudicate the parentage of the adult child *may only be maintained by the adult child*.

Tex. Fam. Code § 160.602 (emphasis added). Layton argues that a legal representative authorized to bring suit on behalf of an individual who is deceased, incapacitated, or a minor as provided in subsection (a)(6) is not authorized to bring suit on an adult child's behalf because subsection (b) provides that only the "adult child" can maintain suit upon becoming an adult.

We review issues of statutory construction de novo. *City of Rockwall v. Hughes*, 246 S.W.3d 621, 625 (Tex. 2008). In construing statutes, our primary objective is to give effect to the legislature's intent as expressed in the statute's language. *State v. K.E.W.*, 315 S.W.3d 16, 21 (Tex. 2010). We rely on the plain meaning of the text unless a different meaning is supplied by legislative definition, is apparent from the context, or unless such a construction leads to absurd results. *City of Rockwall*, 246 S.W.3d at 625–26.

Subsection (a) provides that the child—and others specifically enumerated—may maintain an action to adjudicate parentage, but once the child becomes an adult,

6

subsection (b) provides that only the adult child may maintain the action. Thus, once a child becomes an adult, the other individuals and entities identified in subsection (1)(a) are expressly excluded from maintaining a suit to establish parentage. *See Office of Attorney Gen. of Tex. v. Crawford*, 322 S.W.3d 858, 861 (Tex. App.—Houston [1st Dist.] 2010, pet. denied) ("The use of the word 'only' expressly excludes from the scope of statutory standing all persons other than those identified.").

In the context of the statutory scheme, however, nothing in the statute compels the conclusion that the legislature intended to divest a mentally disabled child of the ability to maintain an action to adjudicate parentage through a court-appointed guardian upon reaching adulthood. Indeed, such a conclusion would be contrary to the legislature's determination that a proceeding to adjudicate the parentage of a child having no presumed, acknowledged, or adjudicated father may be commenced at any time, including after the date the child becomes an adult. *See* Tex. Fam. Code § 160.606.[5] It would also lead to the absurd result of allowing a physically disabled adult child to maintain an action to adjudicate parentage while prohibiting a mentally disabled adult child from doing the same. *See K.E.W.*, 315 S.W.3d at 21.

We conclude that section 160.602 does not preclude a mentally disabled adult child from maintaining an action to determine parentage through a court-appointed guardian. Therefore, Sharon has standing to pursue the action to determine parentage as the guardian of Michael's person and estate. We overrule Layton's standing argument.

III

The limitations statute in effect at the time Sharon filed suit was section 160.606, which provides that a proceeding to adjudicate the parentage of a child having no presumed, acknowledged, or adjudicated father may be commenced "at any time,

---

[5] The comment to section 160.606 notes that limiting a proceeding to adjudicate parentage after the child has reached the age of majority exclusively to the child "prohibits the filing of an intrusive proceeding by an individual claiming to be a parent of an adult child, or by a legal stranger." *See* Tex. Fam. Code § 160.606, NCUSL cmt. Construing section 160.602(b) to permit a mentally disabled adult child to maintain an action through a court-appointed guardian does not conflict with this policy.

7

including after the date: (1) the child becomes an adult; or (2) an earlier proceeding to adjudicate paternity has been dismissed based on the application of a statute of limitation then in effect." *See* Tex. Fam. Code § 160.606. We begin our analysis with the presumption that a statute is constitutional, and a party challenging its constitutionality bears the burden of demonstrating that it fails to meet constitutional requirements. *See Enron Corp. v. Spring Indep. Sch. Dist.,* 922 S.W.2d 931, 934 (Tex. 1996).

In the trial court, Layton argued that applying section 160.606 to him would violate the Texas Constitution's prohibition against retroactive laws. Article I, section 16, of the Texas Constitution states that "[no] bill of attainder, ex post facto law, retroactive law, or any law impairing the obligation of contracts, shall be made." Tex. Const. art. I, § 16. According to Layton, the statute of limitations applicable to Michael's action is former Family Code section 13.01, as amended in 1983. The 1983 version of section 13.01 provided as follows:

> Sec. 13.01. TIME LIMITATION OF SUIT. A suit to establish the parent-child relationship between a child who is not the legitimate child of a man and the child's natural father by proof of paternity must be brought *on or* before the *second anniversary of the day the child becomes an adult* [ ~~child is four years old~~ ], or the suit is barred.

> SECTION 2. A cause of action that was barred before the effective date of this Act but would not have been barred by Section 13.01, Family Code, as amended by this Act, is not barred until the period of limitations provided by Section 13.01, Family Code, as amended by this Act, has expired.

Act of June 19, 1983, 68th Leg., R.S., ch. 744, secs. 1, 2, 1983 Tex. Gen. Laws 4530, 4531 (emphasis added).

When this statute became effective on June 19, 1983, Michael was ten years old. Layton calculates that Michael then had nearly nine and one-half years, or until he was twenty years old, to file suit. Thereafter, Layton maintains, when Michael turned twenty on December 10, 1992, the statute of limitations on his paternity action expired. By the time section 160.606 was enacted in 2001, Layton argues that Michael was twenty-eight years old and his cause of action against Layton had expired eight years earlier. Once the

8

claim was barred, Layton contends he had a vested right to rely on the statute-of-limitations defense, and therefore extending the limitations period of a claim already barred would violate the Texas Constitution's prohibition against retroactive laws. *See Baker Hughes, Inc. v. Keco R. & D., Inc.*, 12 S.W.3d 1, 4 (Tex. 1999).

Recently, the Supreme Court of Texas addressed the Texas Constitution's prohibition on retroactive laws in *Robinson v. Crown Cork & Seal Co.*, 335 S.W.3d 126 (Tex. 2010).[6] The *Robinson* court noted that the presumption against retroactive legislation is deeply rooted in our jurisprudence. *Id.* at 136. The court also acknowledged, however, that not all statutes that apply retroactively are constitutionally prohibited. *Id.* at 139. Instead, the prohibition against retroactive laws must be governed by its purpose. *Id.* at 138. The court concluded that the presumption against retroactivity has two fundamental objectives: (1) protecting the people's reasonable, settled expectations, and (2) protecting against abuses of legislative power. *Id.* at 139.

Notably, the *Robinson* court determined that applying the traditional analysis of whether a retroactive statute "impairs vested rights" is problematic. *Id.* at 140. After conducting an extensive analysis of cases applying a vested-rights analysis, the court concluded that "[w]hat constitutes an impairment of vested rights is too much in the eye of the beholder to serve as a test for unconstitutional retroactivity." *Id.* at 143. Eschewing a bright-line test, the *Robinson* court instead identified three factors courts are to consider in determining whether a statute violates the Texas Constitution's prohibition against

---

[6] Although *Robinson* issued six months before the hearing was held and the trial court's judgment was signed, neither party cites or discusses the case. Further, Sharon does not expressly argue that section 160.606 applies to Michael. Nevertheless, the Supreme Court of Texas has held that when the only issue is the question of which statute of limitations applies, we should apply the correct limitations statute even if the appellee does not file any brief. *Ditta v. Conte*, 298 S.W.3d 187, 190 (Tex. 2009). Additionally, we are instructed to "reasonably, yet liberally" construe an appellant's brief to reach the merits of an appeal whenever it is reasonably possible to do so. *Id.* In her appellate brief, Sharon argues that former section 13.01 does not apply to Michael's claims and she expressly raises an issue concerning which statute of limitations should apply. Therefore, even though Sharon does not specifically argue that Family Code section 160.606 is applicable, we broadly construe her issues to encompass the question of whether applying section 160.606 in this case would violate the Texas Constitution's prohibition against retroactive laws. *See id.*

retroactive laws: (1) the nature and strength of the public interest served by the statute, as evidenced by the legislature's factual findings; (2) the nature of the prior right impaired by the state; and (3) the extent of the impairment. *Id.* at 145. The court emphasized:

> The perceived public advantage of a retroactive law is not simply to be balanced against its relatively small impact on private interests, or the prohibition would be deprived of most of its force. There must be a compelling public interest to overcome the heavy presumption against retroactive laws. To be sure, courts must be mindful that statutes are not to be set aside lightly. This Court has invalidated statutes as prohibitively retroactive in only three cases, all involving extensions of statutes of limitations. But courts must also be careful to enforce the constitutional prohibition to safeguard its objectives.

*Id.* at 145–46. The court went on to note that "changes in the law that merely affect remedies or procedure, or that otherwise have little impact on prior rights, are usually not unconstitutionally retroactive." *Id.* at 146.

Mindful of the twin objectives of the presumption against retroactive laws, we turn to consideration of the *Robinson* factors in this case. We first consider the nature and strength of the public interest served by Family Code section 160.606. As noted above, section 160.606 permits a child having no presumed, acknowledged, or adjudicated father to commence a proceeding to adjudicate parentage at any time, including after the child becomes an adult. Tex. Fam. Code § 160.606. In this case, Michael's parentage action is combined with an action for support of an adult disabled child as provided in the Family Code. *See* Tex. Fam. Code § 154.305(a). Although we have no legislative findings from either statute to consider, courts have recognized that "'[t]he state has a compelling interest in assuring that the primary obligation for support of illegitimate children falls on both natural parents rather than on the taxpayers of this state.'" *See Tex. Dept. of Human Res. v. Delley*, 581 S.W.2d 519, 521 (Tex. Civ. App.—Dallas 1979, writ ref'd n.r.e.) (quoting *State v. Wood*, 569 P.2d 1148, 1151 (Wash. 1977)); *see also Mills v. Habluetzel*, 456 U.S. 91, 104 (1982) (O'Connor, J., concurring) (noting that the state "has a strong interest, peculiar to the [s]tate itself, in ensuring that genuine claims for child support are not denied"). Moreover, a state "may not invidiously discriminate against illegitimate

10

children by denying them substantial benefits accorded children generally." *Gomez v. Perez*, 409 U.S. 535, 538 (1973). Consequently, all states now provide some method for requiring fathers to support their illegitimate children. *In re J.W.T.*, 872 S.W.2d 189, 193 n.14 (Tex. 1994). The public policy of this state reflects the obligation to support both legitimate children and illegitimate children. *See In re Miller*, 605 S.W.2d 332, 336 (Tex. Civ. App.—Fort Worth 1980), *aff'd by In re J.A.M.*, 631 S.W.2d 730 (Tex. 1982). For children with no presumed father, paternity must first be established to enforce the obligation to support. *In re Miller*, 605 S.W.2d at 336; *Delley*, 581 S.W.2d at 521. Therefore, section 160.606 furthers the state's compelling interest in ensuring that a child's parents, rather than the taxpayers, support the child because it provides the mechanism that enables a child who has no presumed father to establish parentage and thereby obtain that support.

We next consider the nature of the prior right impaired by the statute and the extent of the impairment. Here, Layton contends that he has a vested right to the operation of the prior statute of limitations to bar Michael's claims, specifically the 1983 version of former Family Code section 13.01. To determine whether Layton's contention is correct, we must review the evolution of the Family Code's limitations statutes applicable to paternity actions.

When Michael was born in 1972, the Family Code had not yet been enacted. In 1973, the United States Supreme Court in *Gomez v. Perez* held that Texas could not discriminate between legitimate and illegitimate children seeking support. *See* 409 U.S. at 538. That same year, Texas enacted the Family Code. *See In re J.W.T.*, 872 S.W.2d at 193 (noting that the Family Code was enacted in 1973).

In 1975, chapter 13 of the Family Code provided that an illegitimate child could institute a paternity action only before the child was one year old or the suit was barred. Act of June 2, 1975, 64th Leg., R.S., ch. 476, § 24, 1975 Tex. Gen. Laws 1261, 1261–62. In 1982, this version of section 13.01 was declared unconstitutional by the United States Supreme Court because the statute denied "illegitimate children in Texas the equal

11

protection of the law" as guaranteed by the Fourteen Amendment to the United States Constitution. *Mills*, 456 U.S. at 102. Following *Mills*, the Supreme Court of Texas also held the statute unconstitutional. *In re J.A.M.*, 631 S.W.2d at 732.

Chapter 13 was amended in 1981 to provide that a suit to establish paternity must be brought before the child is four years old or the suit was barred. Act of June 1, 1981, 67th Leg., R.S., ch. 674, § 2, 1981 Tex. Gen. Laws 2536, 2536–37. Although the *J.A.M.* court expressed no opinion on the constitutionality of the 1981 amendment's four-year statute of limitations, *see J.A.M.*, 631 S.W.2d at 732, the court of appeals in *Smith v. Cornelius* held that this amendment was also unconstitutional based on its analysis of *Mills* and *Pickett v. Brown*, 462 U.S. 1, 18 (1983), in which the Supreme Court held that Tennessee's two-year statute of limitations on paternity and child-support actions was unconstitutional. *See* 665 S.W.2d 182, 184 (Tex. App.—Dallas 1984, no pet.); *see also Clark v. Jeter*, 486 U.S. 456, 464 (1988) (holding Pennsylvania's similarly worded six-year statute of limitations for paternity actions unconstitutional).

In 1983, chapter 13 was again amended to extend the limitations period to two years after a child becomes an adult. Act of May 24, 1983, 68th Leg., R.S., ch. 744, § 1, 1983 Tex. Gen. Laws 4530, 4531. The 1983 version of section 13.01 is the version Layton contends applies to bar Michael's claims.[7]

In *Perry v. Merritte*, an action to establish paternity brought in 1979, this court held that neither the 1979 nor the 1981 version of section 13.01 applied to a child born before those statutes were enacted because the statutes did not expressly provide that they were effective retroactively. *See* 643 S.W.2d 496, 497 (Tex. App.—Houston [14th Dist.]

---

[7] In *Dickson v. Simpson*, the Supreme Court of Texas held that the one-year, the four-year, and the twenty-year versions of section 13.01 unconstitutionally discriminated against illegitimates in a case in which the plaintiff was forty-two years old in 1979 and thus was unable to take advantage of any of the enactments in her suit to establish paternal inheritance rights. 807 S.W.2d 726, 727 (Tex. 1991). Layton does not discuss or attempt to distinguish *Dickson*, which Sharon cited to support her argument that Layton cannot rely on an unconstitutional statute to bar this paternity action. *See Blake v. Blake*, 878 S.W.2d 209, 210 (Tex. App.—Corpus Christi 1994, writ denied). We need not consider whether *Dickson* applies in this case, however, because as we explain below, the twenty-year statute of limitations contained in the 1985 version of section 13.01 does not apply to this action.

1982, no writ); *see also Delley*, 581 S.W.2d at 521 (holding one-year statute of limitations applies only to children born after the statute's effective date of September 1, 1975); *Alvarado v. Gonzales*, 552 S.W.2d 539, 542–43 (Tex. Civ. App.—Corpus Christi 1977, no writ) (concluding one-year limitations statute did not apply retroactively and noting that "[a] statute should not be given retroactive effect unless such construction is required by explicit language or by necessary construction"). Because neither version of section 13.01 applied retroactively, the *Perry* court applied the general four-year statute of limitations applicable to claims for which no specific limitations period was provided and held that the limitations period was tolled during the child's minority. *Perry*, 643 S.W.2d at 497.

Layton argues, however, that unlike the 1975 and 1981 versions of section 13.01, the 1983 version—which allowed a child to bring a suit to establish paternity up to the age of twenty—was expressly made retroactive and thus applicable to all persons under twenty years of age by providing that it applied to causes of action that were barred before its effective date. *See* Act of May 24, 1983, 68th Leg., R.S., ch. 744, § 2, 1983 Tex. Gen. Laws 4530, 4531. The specific language Layton relies on is contained in section 2 of the statute:

> A cause of action that was barred before the effective date of this Act but would not have been barred by Section 13.01, Family Code, as amended by this Act, is not barred until the period of limitations provided by Section 13.01, Family Code, as amended by this Act, has expired.

*Id.*

Few courts appear to have considered the application of this amendment. In *Texas Attorney General v. Daurbigny*, the alleged father argued that the 1983 version of section 13.01 did not apply to an action brought by the mother of a child who was a minor at the time of the 1983 amendment because her claim was not "barred before the effective date" of the statute. *See* 702 S.W.2d 298, 301 (Tex. App.—Houston [1st Dist.] 1985, no writ). The court declined to decide the issue, however, reasoning that even if the statute did not apply, the general four-year statute applied and was tolled during the child's minority. *Id.*

13

Another court considered similar language contained in a 1989 amendment to former section 13.01, which provided as follows: "[t]he children to whom this section applies include [a child] for whom a paternity action was brought but dismissed because a statute of limitations of less than eighteen years was in effect." *See In re Sicko*, 900 S.W.2d 863, 865 (Tex. App.—Corpus Christi 1995, no writ) (citing Act of June 14, 1989, 71st Leg. R.S., ch. 375, § 9, 1989 Tex. Gen. Laws 1477, 1479). In that case, the court concluded that this amendment did not apply to the appellant, who was born before the statute's effective date, because "he did not file a paternity action which was dismissed prior to the subsection's enactment." *Id.* Having concluded that no specific provision of the Family Code applied to the appellant, the court applied the four-year residual statute of limitations and held that appellant's cause of action to establish paternity was barred. *Id.*

We likewise conclude that the plain language of the 1983 version of section 13.01 is expressly made retroactive only to claims that were barred before its enactment.[8] Therefore, we must determine whether Michael's claim "was barred before the effective date" of the statute. *See* Act of May 24, 1983, 68th Leg., R.S., ch. 744, § 2, 1983 Tex. Gen. Laws 4530, 4531.

As previously discussed, this court and others determined that pre-1983 versions of Family Code section 13.01 did not apply to the paternity action of a child born before the effective date of the statutes because the statutes were not made expressly retroactive; these courts then applied the general or "residual" four-year statute of limitations. *See Sicko*, 900 S.W.2d at 865; *Daurbigny*, 702 S.W.2d at 301; *Perry*, 643 S.W.2d at 497; *Delley*, 581 S.W.2d at 521; *Alvarado*, 552 S.W.2d at 543. The court in the more recent

---

[8] We note that in support of his argument against the retroactive application of section 160.606, Layton quotes at length from Justice Whitham's concurrence in *Fite v. King*, 718 S.W.2d 345 (Tex. App.—Dallas 1986, writ ref'd n.r.e.). There, Justice Whitham argued that the majority should have reached the appellant's argument that the 1983 amendment to Family Code section 13.01 allows a previously barred claim to be litigated. *Id.* at 347–48 (Whitham, J., concurring). In Justice Whitham's view, because the 1983 amendment "expressly revives causes of action already barred" it violated the Texas Constitution's prohibition on retroactive laws and is therefore "unconstitutional and inoperative." *Id.* at 349–50. This is the same amendment on which Layton relies to assert that the limitations provision contained in the 1983 version of former section 13.01 applies to bar Michael's claims.

case of *Blake v. Blake* applied a different analysis to reach the same conclusion. *See* 878 S.W.2d at 210–11. In *Blake*, the court held that the alleged father was not entitled to rely on the 1975 version of section 13.01 after the courts in *Mills* and *In re J.A.M.* had declared it unconstitutional. *Id.* at 210. Because unconstitutionality rendered the 1975 statute a nullity, the court held that the residual limitations period of section 16.051 and the tolling provision of section 16.001(b)(1) of the Texas Civil Practice and Remedies Code applied. *Id.* at 210–11. The court noted that except for changing the termination of the age of minority from twenty-one to eighteen, the residual statute of limitations has remained unchanged since at least 1958. *Id.* at 211. Accordingly, to determine whether Michael's claim was "barred before the effective date" of the 1983 version of section 13.01, we likewise apply the residual limitations statute. *See id.*

With one exception not relevant here, section 16.051 of the Texas Civil Practice and Remedies Code provides that "[e]very action for which there is no express limitations period . . . must be brought not later than four years after the day the cause of action accrues." Tex. Civ. Prac. & Rem. Code § 16.051. Further, the tolling provision of section 16.001 of the Civil Practice and Remedies Code provides that "[i]f a person entitled to bring a personal action is under a legal disability when the cause of action accrues, the time of the disability is not included in a limitations period." *Id.* § 16.001(b). A person is under a legal disability if the person is (1) younger than 18 years of age, regardless of whether the person is married; or (2) of unsound mind. *Id.* § 16.001(a).

Sharon contends that Michael has been under the legal disability of unsound mind since birth, and therefore the statute of limitations has never run on his claims. *See id.* § 16.001(a)(2), (b). If, as Sharon contends, Michael's action is tolled indefinitely, then by its plain terms the 1983 amendment to former Family Code section 13.01 cannot apply retroactively because Michael's claim was not "barred before the effective date" of the statute.

The purpose of section 16.001(a)(2) is to protect a person of unsound mind by ensuring that a legally disabled person's right to bring suit will not be precluded by a

15

statute of limitations, prior to removal of the disability. *Ruiz v. Conoco, Inc.*, 868 S.W.2d 752, 755 (Tex. 1993); *Doe v. Catholic Diocese of El Paso*, 362 S.W.3d 707, 722 (Tex. App.—El Paso 2011, no pet.). The tolling provision applies to a person who suffers from an inability to participate in, control, or understand the progression and disposition of their lawsuit. *Ruiz*, 868 S.W.2d at 755; *Doe*, 362 S.W.3d at 722. The *Ruiz* court considered the effect of the disability of unsound mind, drawing a comparison between the legal disabilities of minority and mental incapacity:

> It is impossible to avoid the analogy between the situation of the child plaintiff . . . and the arguably incompetent plaintiff in this case. Traditionally the interests of minors, incompetents, and other helpless persons are viewed in law as substantially similar, and both the substantive law and the rules of procedure accord them comparable treatment. In many respects, mentally incompetent persons present a more compelling case for legal protection. They are frequently less communicative, more vulnerable and dependent than children. . . . The mentally incompetent are less likely than children to have someone intimately interested in their welfare and inclined to act in their behalf.

868 S.W.2d at 755 (quoting *Tinkle v. Henderson*, 730 S.W.2d 163, 166 (Tex. App.—Tyler 1987, writ ref'd)). The court concluded that the mere commencement of a lawsuit by or on behalf of a legally incapacitated individual, considered alone, is insufficient to deny the protection of the tolling provision. *Id.* at 756. In reaching this conclusion, the court recognized the possibility that for some plaintiffs the statute of limitations may be tolled indefinitely:

> We are aware of "[t]he possibility that in a case such as this a limitation period may remain open for the lifetime of the plaintiff. . . ." . . . However, this possibility
>
>> does not dictate a different result: The tolling statute reflects a considered legislative judgment that in enumerated circumstances the strong policy in favor of prompt disposition of disputes must give way to the need to protect a plaintiff who is unable to protect himself or herself. That need will continue so long as the plaintiff remains incompetent.

*Id.* (citations omitted).

16

Layton argues, however, that even assuming the tolling provision of section 16.001 applied, the trial court's judgment may still be affirmed for several reasons. First, Layton contends that Michael's disability of minority ended when he reached age eighteen, and therefore he had until he turned twenty-two on December 10, 1994, to bring suit, but he failed to do so. Consequently, Layton contends, Michael's suit is barred. Next, Layton argues that Gribble failed to present expert testimony or otherwise carry her burden to demonstrate that Michael's disability of unsound mind began at birth, and therefore Michael may not tack the disability of unsound mind onto the disability of minority to extend the limitations period. *See* Tex. Civ. Prac. & Rem. Code § 16.001(c) ("A person may not tack one legal disability to another to extend a limitations period."). Finally, Layton argues that it is unclear whether Michael is a person of unsound mind as contemplated by the tolling statute, citing *Hargraves v. Armco Foods, Inc.*, for the proposition that "persons of unsound mind" are synonymous with "insane persons." *See* 894 S.W.2d 546, 547 (Tex. App.—Austin 1995, no writ).

Generally, to prevail on an unsound-mind tolling theory, the proponent of the theory must produce either (1) specific evidence that would enable the court to find that the incompetent person did not have the mental capacity to pursue litigation, or (2) a fact-based expert opinion to that effect. *Freeman v. Am. Motorists Ins. Co.*, 53 S.W.3d 710, 713 (Tex. App.—Houston [1st Dist.] 2001, no pet.). Thus, expert testimony is not required if other, specific evidence is presented. *See id.* Further, as *Hargraves* and other cases demonstrate, although the term "unsound mind" generally is considered equivalent to insanity or incompetency, an individual need not be adjudicated insane or incompetent to warrant protection. *Hargraves*, 894 S.W.2d at 547; *Casu v. CBI Na–Con, Inc.*, 881 S.W.2d 32, 34 (Tex. App.—Houston [14th Dist.] 1994, no writ). We therefore decline to conclude that the legal disability of "unsound mind" necessarily requires that a legally incompetent individual be declared "insane" before this tolling provision may apply.

To support Layton's contention that Michael's disability of unsound mind did not begin at birth, Layton points to Sharon's testimony that Michael's "mild mental

17

retardation" was diagnosed at age "four or five months" and his seizures did not begin until age six. But Sharon also testified that Michael was sick when he was born, and at age four or five months he was diagnosed with "mild mental retardation." It is also undisputed that Sharon pleaded and testified that she obtained a court-ordered guardianship over Michael's person and estate. Daniel Armond testified that, according to an assessment of Michael's mental and physical condition, Michael's condition began at birth. Further, this assessment, which was admitted without objection, reflected that "mental retardation was suspected at birth" and its etiology was "reportedly a virus during the late months of pregnancy."

Thus, contrary to Layton's assertion, the record contains evidence that since Michael's birth, he has been a person who suffers from an inability to participate in, control, or understand the progression and disposition of his lawsuit. *See Ruiz*, 868 S.W.2d at 755. There is no evidence to the contrary. Further, because Sharon has presented evidence that Michael's legal disability of unsound mind began at birth, we reject Layton's argument that Sharon is attempting to "tack" the disability of unsound mind to the disability of minority to impermissibly extend the limitations period. *See id.* at 756 (recognizing that statute of limitations may be tolled indefinitely for legally incompetent persons).

On this record, therefore, the evidence supports a finding that the four-year limitations period has been continuously tolled by Michael's legal disability of unsound mind. Because Michael's action has been continuously tolled from his birth, it was never "barred before the effective date" of the 1983 version of former Family Code section 13.01. *See* Act of June 19, 1983, 68th Leg., R.S., ch. 744, secs. 1, 2, 1983 Tex. Gen. Laws 4530, 4531. Consequently, the 1983 version of former Family Code section 13.01 cannot apply to Michael. To the extent the trial court may have concluded otherwise, it abused its discretion.

Because the 1983 version of Family Code section 13.01 never applied to Michael's action, Layton never acquired a "vested right" or the settled expectation that

18

the operation of the statute extinguished Michael's claims in 1992. *See Robinson*, 335 S.W.3d at 146 (noting that "changes in the law that . . . have little impact on prior rights, are usually not unconstitutionally retroactive"). The absence of any settled expectation that a statute of limitations bars Michael's action, and the countervailing compelling state interest in ensuring that the natural parents of a child assume primary responsibility for the child—including a disabled adult child with no presumed father—weighs in favor of the retroactive application of Family Code section 160.606, which permits a suit to adjudicate parentage to be commenced at any time.

We need not decide whether section 160.606 applies retroactively to Michael's action, however, because even if it does not, the residual four-year statute of limitations applies in the absence of a more specific limitations provision. *See Daurbigny*, 702 S.W.2d at 301; *Perry*, 643 S.W.2d at 497; Tex. Civ. Prac. & Rem. Code § 16.051. Further, the running of the limitations period was continuously tolled due to Michael's legal disability of unsound mind. Tex. Civ. Prac. & Rem. Code § 16.001. We therefore sustain Gribble's issues.

* * *

Because the trial court erred in concluding that the 1983 version of section 13.01 applied to bar Michael's claims, we reverse and remand this case to the trial court for further proceedings consistent with this opinion.

/s/      Jeffrey V. Brown
         Justice

Panel consists of Chief Justice Hedges and Justices Brown and Busby.

19