Matthew J. SMITH, Plaintiff,

v.

SIKORSKY AIRCRAFT CORP., et al., Defendants.

Civil Action No. H–14–0091.

United States District Court, S.D. Texas, Houston Division.

Signed Aug. 20, 2014.

James Allon Hall, Branton Hall et al., San Antonio, TX, for Plaintiff.

Garrett J. Fitzpatrick, Kevin F. Cook, Paul N. Bowles, III, Fitzpatrick & Hunt, New York, NY, James Gregory Waller, Kelly Spragins Sandill, Andrews Kurth LLP, Charlotte Ann Fields, Gieger, Laborde & Laperouse, L.L.C., Houston, TX, for Defendants.

### *MEMORANDUM AND ORDER*

NANCY F. ATLAS, District Judge.

This products liability case is before the Court on the Motion for Summary Judgment Based on the Two–Year Statute of Limitations ("Motion") [Doc. # 29] filed by Defendants Sikorsky Aircraft Corporation, Sikorsky Support Services, Inc., United Technologies Corporation, Parker–Hanni-

fin Corporation, and Parker Aerospace Group, to which Plaintiff Matthew J. Smith filed a Response [Doc. # 35], and Defendants filed a Reply [Doc. # 37]. Having reviewed the record and the applicable legal authorities, the Court **grants** the Motion.

## I. BACKGROUND

Plaintiff was the pilot of a Blackhawk Helicopter that crashed on January 12, 2009. He suffered serious and permanent injuries in the crash. At the time of the crash, Plaintiff was serving in the Texas Army National Guard. On July 26, 2009, Plaintiff was ordered to federal active duty to ensure his ability to receive medical care at federal military facilities. Plaintiff's military service ended when he retired on March 10, 2012.

Plaintiff filed this lawsuit on January 14, 2014. Defendants have moved for summary judgment that the claims are time-barred. The Motion has been fully briefed and is now ripe for decision.

## II. SUMMARY JUDGMENT STANDARD

Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary judgment against a party who fails to make a sufficient showing of the existence of an element essential to the party's case, and on which that party will bear the burden at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994) (*en banc*); *see also Curtis v. Anthony*, 710 F.3d 587, 594 (5th Cir.2013). Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.

R.Civ.P. 56(a); *see Celotex*, 477 U.S. at 322–23, 106 S.Ct. 2548; *Curtis*, 710 F.3d at 594.

■ In deciding whether a genuine and material fact issue has been created, the court reviews the facts and inferences to be drawn from them in the light most favorable to the nonmoving party. *Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 412 (5th Cir.2003). A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-movant. *Tamez v. Manthey*, 589 F.3d 764, 769 (5th Cir.2009) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). The non-movant's burden is not met by mere reliance on the allegations or denials in the non-movant's pleadings. *See Diamond Offshore Co. v. A & B Builders, Inc.*, 302 F.3d 531, 545 n. 13 (5th Cir.2002); *Chambers v. Sears, Roebuck and Co.*, 428 Fed. Appx. 400, 407 (5th Cir.2011). Likewise, "conclusory allegations" or "unsubstantiated assertions" do not meet the non-movant's burden. *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 399 (5th Cir.2008). Instead, the nonmoving party must present specific facts which show "the existence of a genuine issue concerning every essential component of its case." *Firman v. Life Ins. Co. of N. Am.*, 684 F.3d 533, 538 (5th Cir.2012) (citation and internal quotation marks omitted). In the absence of any proof, the court will not assume that the non-movant could or would prove the necessary facts. *Little*, 37 F.3d at 1075 (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990)).

## III. STATUTE OF LIMITATIONS ANALYSIS

Defendants bear the burden to prove that the statute of limitations expired be-

fore Plaintiff filed this lawsuit. *See In re Hinsley*, 201 F.3d 638, 644–45 (5th Cir. 2000) (citing *KPMG Peat Marwick v. Harrison County Hous. Fin. Corp.*, 988 S.W.2d 746, 748 (Tex.1999)). The parties correctly agree that a two-year statute of limitations applies to each of Plaintiff's claims in this case. It is undisputed that the helicopter crash in which Plaintiff was injured occurred well more than two years before Plaintiff filed this lawsuit.

[2] Plaintiff argues that the limitations period was tolled, and he has the burden to show a factual basis for tolling. *See Alexander v. Cockrell*, 294 F.3d 626, 629 (5th Cir.2002); *S.E.C. v. Jackson*, 908 F.Supp.2d 834, 873 (S.D.Tex.2012) (Ellison, J.). Plaintiff argues specifically that the statute of limitations period was tolled during his military service by the Servicemembers' Civil Relief Act ("SCRA") and by § 4310.017 of the Texas Government Code. Plaintiff argues also that the statute of limitations period was tolled pursuant to § 16.001(a)(2) of the Texas Civil Practice and Remedies Code because he was under a legal disability for approximately five months after the helicopter crash.

## A. *Servicemembers' Civil Relief Act ("SCRA")*

The SCRA tolls "any action or proceeding in any court ... by or against any person in military service." 50 App. U.S.C. § 526; *Rodriguez v. U.S.*, 2013 WL 6644691, *6 (W.D.Tex. Dec. 17, 2013). "The period of a servicemember's military service may not be included in computing any period limited by law, regulation, or order for the bringing of any action or proceeding in a court ... by or against the servicemember...." 50 App. U.S.C. § 526(a).

██ It is undisputed that Plaintiff was serving in federal active duty status from July 26, 2009, when he was assigned to

federal military service for purposes of receiving medical treatment, until March 10, 2012, when he retired from military service. This period is excluded from the calculation of the statute of limitations for purposes of Plaintiff's claims. It is likewise undisputed that Plaintiff filed this lawsuit within two years after he ended his military service on March 10, 2012. As a result, the relevant and disputed time period is the 194 days between the helicopter crash on January 12, 2009, and July 26, 2009.

Prior to Plaintiff's entering federal active duty military service on July 26, 2009, he was in the Texas Army National Guard. For purposes of the SCRA, "military service" by a member of the National Guard includes only those who (1) have been activated as members of the federal armed service under Title 10 or (2) are serving under a "call to active service authorized by the President or the Secretary of Defense for a period of more than 30 consecutive days" to respond to a national emergency. *See* 50 App. U.S.C. § 511(2)(A)(ii). "Active duty" military service "does not include full-time National Guard duty." *See* 10 U.S.C. § 101(d)(1). Because Plaintiff was serving in the Texas Army National Guard during the relevant time period pursuant to Title 32 and not under a call to active service to respond to a national emergency, the time before July 26, 2009 is not excluded under the SCRA.

## B. *Section 431.017 of the Texas Government Code*

██ Plaintiff argues that the period of time between January 12, 2009, and July 26, 2009, is excluded pursuant to the Texas Government Code. The version of § 431.017 of the Texas Government Code in effect from 2003 to 2013 provided that a member of the state military forces who is ordered to state active duty ("SAD") "by

the governor or by other proper authority" under Texas law is entitled to the benefits provided by the SCRA. *See* Tex. Gov't Code § 431.017. The Governor is authorized to order a member of the state military forces to active duty "to repel or suppress an invasion of or insurrection in or threatened invasion of or insurrection in the state or if the governor considers it necessary to enforce state law" or "to assist civil authorities in guarding prisoners, conveying prisoners within the state, or executing law as the public interest or safety requires." Tex. Gov't Code § 431.111(a), (b). It is undisputed that these circumstances did not apply to Plaintiff's National Guard service. Instead, Plaintiff's National Guard duty during the relevant time period between January 12, 2009 and July 26, 2009, involved work in the recruiting and retention office, and he served under orders to active duty for special work ("ADSW") pursuant to § 505 of Title 32 of the United States Code. ADSW status and SAD status are mutually exclusive; National Guard members "who are called to SAD will be immediately released from ADSW." *See* Personnel–Procurement Army National Guard Strength Maintenance Program [Doc. # 37–2], § 9–37(b). Consequently, the period during which Plaintiff was serving an ADSW did not constitute SAD for purposes of § 431.017 tolling.

### C. *Section 16.001(a)(2) of the Texas Civil Practice and Remedies Code*

■ Plaintiff argues in his Response that much of the period between January 12, 2009, and July 26, 2009, is excluded under Texas law because he was "of unsound mind" for approximately five months after the crash.[1] Section 16.001(a)(2) of the Texas Civil Practice and Remedies Code provides that a person is under a legal disability for purposes of the statute of limitations if that person is "of unsound mind." Tex. Civ. Prac. & Rem. Code § 16.001(a)(2). "The purpose of section 16.001(a)(2) is to protect a person of unsound mind by ensuring that a legally disabled person's right to bring suit will not be precluded by a statute of limitations, prior to removal of the disability." *Gribble v. Layton*, 389 S.W.3d 882, 893 (Tex.App.-Houston [14th Dist.] 2012, review denied) (citing *Ruiz v. Conoco, Inc.*, 868 S.W.2d 752, 755 (Tex.1993); *Doe v. Catholic Diocese of El Paso*, 362 S.W.3d 707, 722 (Tex.App.-El Paso 2011, no pet.)). Tolling based on unsound mind requires either "(1) specific evidence that would enable the court to find that the incompetent person did not have the mental capacity to pursue litigation, or (2) a fact-based expert opinion to that effect." *Id.* at 894 (citing *Freeman v. Am. Motorists Ins. Co.*, 53 S.W.3d 710, 713 (Tex.App.-Houston [1st Dist.] 2001, no pet.)).

■ *Medical Evidence.*—The uncontroverted medical records, prepared during the relevant time period between January 12, 2009 and July 26, 2009, demonstrate that Plaintiff was not "of unsound mind" during the period. The medical records include significant health care providers' reports.

On January 20, 2009, eight days after the crash, Plaintiff was experiencing "some trouble with short term recall," but commented that he was happy about the recent birth of his daughter. *See* Behavioral Medicine Initial Consultation Note, Exh. C

---

1. Plaintiff filed an Opposed Motion for Leave to File First Amended Complaint ("Motion to Amend") [Doc. # 34] in order to allege that he was of unsound mind following the crash. As explained herein, the proposed amendment would be futile. Moreover, the Court has considered the argument even though it was not raised in the Original Complaint and, therefore, amendment is unnecessary. The Motion to Amend is denied as moot.

to Reply. Plaintiff denied any changes in his mood, and he reported no nightmares or amnesia. *See id.* Plaintiff was "alert and oriented to person, place, day, year and situation." *Id.* His attention span was "intact" and his thought processes were "logical, linear and goal-directed." *Id.* Although Plaintiff's "recent recall" was poor, there were no indications that he was experiencing hallucinations or delusions, and his insight and judgment were intact. *Id.*

On January 27, 2009, a Progress Note shows that Plaintiff was "doing well" and was "finding comfort in the support he has received from family and friends." *See* Behavioral Medicine Progress Note, Exh. D to Reply. Plaintiff reported that he viewed "this as a second chance at life and is looking at what he wants to do with it." *Id.* He did not complain of depression. *See id.*

On February 24, 2009, Plaintiff was seen at an outpatient facility. At that time, he reported that he had no loss of interest in activities and mentioned his baby daughter. *See* Chronological Record of Medical Care, Exh. E to Reply. He reported a decreased appetite, but was alert and oriented to time, place and person. *See id.* The health care provider discussed certain diagnosis and treatment matters with Plaintiff "who indicated understanding." *Id.*

Plaintiff was again seen at the outpatient facility on April 14, 2009. At that time, Plaintiff and his wife both reported that he was doing well. *See* Chronological Record of Medical Care, Exh. F to Reply. He no longer reported a decreased appetite and, instead, reported a "nutritious and satisfying diet." *See id.* Again, treatments were discussed with Plaintiff who "indicated understanding." *See id.*

A discharge summary prepared on April 22, 2009, reflected that Plaintiff's wife, as his primary caregiver, was not providing assistance with financial matters. *See* Discharge Summary, Exh. G to Reply. It was noted that Plaintiff "[e]xpresses complex ideas, feelings, and needs clearly, completely, and easily in all situations with no observable impairment." *Id.* Plaintiff complained of fatigue and low endurance. *See id.* Plaintiff described normal meal patterns and, although he was able to feed himself, he was unable to shop and cook for himself. *See id.* He was assessed as "Alert/oriented, able to focus and shift attention, comprehends and recalls task directions independently" and he reported that he was "never" confused. *Id.* He reported no feelings of depression, and reported feeling anxious "less often than daily" (which was the option of least frequency other than "none of the time"). *See id.* He did not demonstrate any memory deficit, impaired decision-making, or delusional or hallucinatory behavior. *See id.* Plaintiff continued to report that he was weak and tired. *See id.* He reported that he was able to "dial numbers and answer calls appropriately and as desired" in connection with use of a telephone. *See id.* He was able to manage his medications independently, taking the correct medications at the proper dosages. *See id.*

On May 26, 2009, Plaintiff was again seen at the outpatient facility. Plaintiff reported that he had no problem concentrating, was not lethargic, and did not suffer from anxiety, depression, hypersomnia, insomnia, or nightmares. *See* Chronological Record of Medical Care, Exh. H to Reply. His auditory comprehension was not limited and, again, he indicated understanding of the discussions regarding his medications and treatment. *See id.*

Plaintiff's medical records clearly show that he was not "of unsound mind" for purposes of § 16.001(a)(2) tolling of the statute of limitations.

*Plaintiff's Wife's Declaration.*—Plaintiff presents no medical or other expert evidence to support his tolling argument under § 16.001(a)(2). Instead, Plaintiff has submitted his wife's sworn declaration. *See* Declaration of Christie J. Smith, Exh. 6 to Response. In the Declaration, Mrs. Smith states that throughout the relevant time period between January 12, 2009 and July 26, 2009, Plaintiff was heavily medicated. Mrs. Smith does not explain how and to what extent the medications rendered Plaintiff unable to comprehend his legal rights. *See Gibson v. Houston Launch Pad*, 378 Fed.Appx. 399, 400 (5th Cir.2010) (affirming dismissal of claims as time-barred over § 16.001(a)(2) argument where Plaintiff offered evidence he "might have suffered serious mental afflictions that were treated with psychoactive medications" without evidence of the effect of those mental conditions and medications on his ability to manage his affairs). The minor, drug-induced mental impairments described by Mrs. Smith do not rise to the level of "unsound mind" for purposes of § 16.001(a)(2) tolling. *See Hargraves v. Armco Foods, Inc.*, 894 S.W.2d 546, 548 (Tex.App.-Austin 1995, no pet.).

Mrs. Smith describes three episodes when Plaintiff was delusional while in the hospital prior to January 29, 2009.[2] *See* Christie Smith Declaration, p. 2. She notes that he "was silent" when she showed him photographs of their newborn daughter, that he was forgetful, and that he was often drowsy. *See id.*

Plaintiff returned home on February 22, 2009. Mrs. Smith states that Plaintiff understood that the health care providers that came to their home "were there to help him get better." *See id.* at 4. Mrs. Smith states that Plaintiff continued to be forgetful, had difficulty sleeping, and would frequently fall asleep during the day. *See id.* Mrs. Smith describes Plaintiff as anxious, "obsessed with his mortality," and in extreme pain. *See id.* at 5.

Mrs. Smith states throughout her Declaration that Plaintiff "did not have the ability to participate in, control or even understand his legal rights or the possibility of initiating a lawsuit." *See id.* at 1, 3, 6. The factual statements in the Declaration, accepted as true for purposes of the pending Motion, do not support this conclusion. Plaintiff suffered a catastrophic injury in a helicopter crash. The resulting pain, memory lapses, and medication requirements do not indicate that he was "of unsound mind." Mrs. Smith interprets Plaintiff's difficulties with short term memory and his hesitation to hold his baby daughter as an indication that he did not "comprehend what was going on around him," but she states also that Plaintiff understood the purpose of the health care providers and appreciated their assistance.[3]

Plaintiff has failed to present specific evidence that would allow this Court to conclude that Plaintiff did not have adequate mental capability to pursue this liti-

---

**2.** Were the Court to find that Mrs. Smith's Declaration raises a genuine issue of material fact as to whether Plaintiff was "of unsound mind" during the time he was experiencing delusions in the hospital between January 12, 2009 and January 29, 2009, there is no evidence that Plaintiff continued to experience hallucinations or other serious mental limitations thereafter. The exclusion of these 17 days from the two-year statute of limitations

period would not render timely Plaintiff's Complaint filed on January 14, 2014.

**3.** Although Mrs. Smith interprets Plaintiff's conduct as an indication that he did not recognize his daughter, the medical records reflect that Plaintiff mentioned his new daughter to a health care provider as early as January 20, 2009, and mentioned her again to a different health care provider in February 2009.

gation during the limitations period. *See, e.g., Chavez v. Medtronic, Inc.,* 2004 WL 309303, *6 (Tex.App.-El Paso 2004, no writ) (affirming summary judgment for defendant where the plaintiff relied on his own affidavit, his wife's affidavit, and his medical records to support § 16.001(a)(2) tolling argument). Plaintiff's evidence in support of § 16.001(a)(2) tolling, which consists exclusively of his wife's declaration, fails to raise a genuine issue of material fact regarding whether he was incapable of participating in and controlling a lawsuit during the relevant time period between January 12, 2009 and July 26, 2009.

## IV. *CONCLUSION AND ORDER*

It is undisputed that Plaintiff failed to file this lawsuit within two years after the date of his injury. The statute of limitations is not tolled during the period between January 12, 2009, and July 26, 2009, pursuant to the SCRA or § 431.017 of the Texas Government Code. Plaintiff has failed to present evidence that raises a genuine issue of material fact in support of his argument that the statute of limitations was tolled during this period pursuant to § 16.001(a)(2) of the Texas Civil Practice and Remedies Code.

Plaintiff's injury occurred on January 12, 2009. As of his entry on federal active military duty on July 26, 2009, 194 days of the 730-day statute of limitations had expired. When he separated from active military duty on March 10, 2012, there were 536 days remaining before the statute of limitations expired. That time period expired on August 28, 2013, but this lawsuit was not filed until January 14, 2014. As a result, it is hereby

**ORDERED** that Defendants' Motion for Summary Judgment Based on the Two-Year Statute of Limitations [Doc. # 29] is **GRANTED.** It is further

**ORDERED** that Plaintiff's Opposed Motion for Leave to File First Amended Complaint [Doc. # 34] is **DENIED AS MOOT.**

The Court will issue a separate final judgment.