Opinion issued February 25, 2021



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-19-00460-CV

_____

**GARELD DUANE ROLLINS, JR., Appellant**

**V.**

**H. PAUL PRESSLER III, NANCY PRESSLER, PAIGE PATTERSON, JARED WOODFILL, WOODFILL LAW FIRM F/K/A/ WOODFILL & PRESSLER, L.L.P., SOUTHWESTERN BAPTIST THEOLOGICAL SEMINARY, AND FIRST BAPTIST CHURCH OF HOUSTON, Appellees**

---

**On Appeal from the 127th District Court**
**Harris County, Texas**
**Trial Court Case No. 2017-69277C**

---

## DISSENTING OPINION

The allegations of sexual abuse in this case are undeniably horrific. However, because the law and the summary-judgment record compel it, I must dissent.

In a summary-judgment proceeding, an issue is conclusively established if reasonable minds could not differ about the conclusion to be drawn from the facts in the record. *Cmty. Health Sys. Prof'l Servs. Corp. v. Hansen*, 525 S.W.3d 671, 681 (Tex. 2017). I agree with the majority that Paul Pressler and the other defendants aligned with him ("Pressler Defendants"), as summary-judgment movants, had the burden to conclusively negate application of the unsound mind tolling doctrine to Rollins's claims. *See Erikson v. Renda*, 590 S.W.3d 557, 563 (Tex. 2019). But I disagree with the majority's determination that the Pressler Defendants failed to meet this burden. Considering the Pressler Defendants' evidence regarding the 2004 lawsuit filed by Rollins against Pressler in Dallas and the judicial admissions made in Rollins's pleadings, reasonable minds could not differ and would necessarily conclude that Rollins was of sound mind in 2004 when his causes of action in this suit accrued.

### *Legal Principles: Unsound Mind*

Civil Practice and Remedies Code section 16.001(a)(2) provides that a person is under a legal disability for purposes of the statute of limitations if that person is "of unsound mind." TEX. CIV. PRAC. & REM. CODE § 16.001(a)(2). When a person is of unsound mind at the time that his cause of action accrues, the applicable statute of limitations will be tolled until the disability is removed. *See id.* § 16.001(b). "The purpose of section 16.001(a)(2) is to protect a person of unsound mind by ensuring

that a legally disabled person's right to bring suit will not be precluded by a statute of limitations, prior to removal of the disability." *Gribble v. Layton*, 389 S.W.3d 882, 893 (Tex. App.—Houston [14th Dist.] 2012, pet. denied) (citing *Ruiz v. Conoco, Inc.*, 868 S.W.2d 752, 755 (Tex. 1993)).

Generally, persons of unsound mind and insane persons are synonymous; however, a person may be of unsound mind without having been adjudicated incompetent. *Doe v. Catholic Diocese of El Paso*, 362 S.W.3d 707, 722–23 (Tex. App.—El Paso 2011, no pet.); *see Hargraves v. Armco Foods, Inc.*, 894 S.W.2d 546, 547 (Tex. App.—Austin 1995, no writ) (noting that section 16.001 does not define "unsound mind" and citing former probate code defining "unsound mind" as "persons non compos mentis, mentally disabled persons, insane persons, and other persons who are mentally incompetent to care for themselves or manage their property and financial affairs"). The unsound mind tolling provision applies to a person who suffers from an inability to participate in, control, or understand the progression and disposition of his lawsuit. *See Ruiz*, 868 S.W.2d at 755.

### *The Pressler Defendants' Evidence*

Here, the summary-judgment record shows that, in November 2003, Rollins and Pressler had an altercation in a Dallas hotel room. In July 2004, Rollins filed suit against Pressler in a Dallas court based on the altercation. Rollins sued Pressler for simple assault, citing Penal Code section 22.01(a)(1), which provides that a

person commits the offense of assault if he "intentionally, knowingly, or recklessly causes bodily injury to another." TEX. PENAL CODE § 22.01(a)(1).

In September 2004, the Hon. Ruby Sondock mediated the dispute. As a result of the mediation, Rollins and Pressler settled and entered into a confidential settlement agreement and a release of claims. Each party, including Rollins and his attorney, signed the settlement agreement. By signing the agreement, each party represented "that execution indicates [a] thorough understanding of the contents."

Under the terms of the 2004 settlement, Pressler agreed to pay Rollins $1,500 per month for 25 years, totaling $450,000.[1] In return, Rollins agreed to release and dismiss his claims against Pressler. The record reflects that the case was then non-suited. From October 2004 until October 2017, when this suit was filed, Pressler paid Rollins $1,500 per month, totaling approximately $234,000.

*Analysis*

The Pressler Defendants' evidence, showing that Rollins prosecuted and settled the Dallas lawsuit against Pressler in 2004, conclusively negated Rollins's claim that he was of unsound mind in 2004. Even taking as true Rollins's claim that he suffers from post-traumatic stress disorder and alcohol abuse, the Pressler Defendants' evidence sufficiently demonstrated that, in 2004, Rollins had the ability

---

[1] Pressler also agreed to pay Rollins's attorney $100,000. It is noteworthy that attorney, Daniel Shea, represented Rollins in the 2004 lawsuit and that Shea filed this suit for Rollins in 2017, advocating that Rollins was of unsound mind in 2004.

to participate in, control, and understand the instant lawsuit. *See Ruiz*, 868 S.W.2d at 755.

Significantly, the 2004 Dallas lawsuit and this lawsuit have much in common. Rollins filed the 2004 lawsuit against Pressler based on assaultive conduct committed by Pressler against Rollins prior to 2004. In this case, Rollins sued the Pressler Defendants for torts associated with assaultive conduct committed by Pressler against Rollins before 2004. To distinguish the suits, Rollins points out that, unlike here, nothing in the Dallas petition or settlement agreement indicated that sexual abuse played any part in that suit. Even so, Rollins's filing of the Dallas lawsuit necessarily showed that he understood that Pressler had committed tortious conduct against him for which he was entitled to seek redress, thereby demonstrating Rollins's ability in 2004 to recognize tortious conduct and to identify Pressler as a tortfeasor capable of harming him. And, while the 2004 lawsuit is based on simple assault, as defined in Penal Code section 22.01, and the instant suit is based on sexual assault, as defined in Penal Code section 22.011, both offenses are categorized as assaultive offenses in Chapter 22 of the Penal Code, indicating an underlying commonality in the nature of the claims. *See* TEX. PENAL CODE §§ 22.01(a)(1), 22.011.

The Pressler Defendants' evidence also showed that Rollins participated in the filing, prosecution, and disposition of the 2004 Dallas suit. For the petition to

have been prepared and filed, Rollins necessarily would have relayed to others what had occurred in the Dallas hotel room. Although the petition reflects that Rollins's mother was also a plaintiff in the suit, she claimed only that Pressler had breached an informal fiduciary duty to her. She did not join Rollins's assault claim or otherwise indicate that she sued on Rollins's behalf. Nothing in the petition indicates that she was acting as Rollins's guardian or that Rollins did not control his own claims. *Cf. Gribble*, 389 S.W.3d at 884, 894 (reflecting that mother of individual, determined to be of unsound mind, filed suit on his behalf as his court-appointed guardian). It is reasonable to infer that Rollins, a named plaintiff, was in control of his claims; it would not be reasonable to infer the opposite. *See Nixon v. Mr. Property Management Co., Inc*., 690 S.W.2d 546, 549 (Tex. 1985) (providing that court reviewing summary-judgment evidence must draw all *reasonable* inferences in favor of non-movant).

The evidence also reflects that, after engaging in mediation, Rollins signed his name to the settlement agreement, acknowledging that he understood its terms. The agreement reflects that Rollins agreed to the settlement on his own behalf and agreed to release his claims against Pressler. The agreement states that each signatory warranted and represented that he had authority "to bind the party . . . for whom such party acts" and that the "claims . . . are owned by the party asserting same." The settlement document reflects that Pressler agreed to make the payments to Rollins

and that, in return, Rollins agreed to release his claims and dismiss the suit, which he did. The record reflects that Pressler paid Rollins the agreed amounts for thirteen years, totaling approximately $234,000.

Rollins intimates that he was of unsound mind in 2004 for purposes of bringing this suit because he had, to some degree, repressed his memories of the sexual abuse. He also asserts that he was unable to bring suit based on the sexual abuse sooner because Pressler had convinced him that the abuse was divinely sanctioned. However, limiting the unsound mind inquiry to the specific subject matter of the suit has no support in Texas law.

As mentioned, Texas courts have considered persons of unsound mind as being synonymous with insane persons, indicating that the unsound mind inquiry is based on the person's general mental state and ability to manage his own affairs rather than the person's specific mental state relating only to the subject matter of the lawsuit. *See Catholic Diocese of El Paso*, 362 S.W.3d at 722–23; *Hargraves*, 894 S.W.2d at 547. And Texas courts have generally applied the doctrine of unsound mind to toll limitations in cases in which a plaintiff's mental impairment was substantial and prolonged, preventing the plaintiff from being aware of, and able to assist with, his lawsuit. *See, e.g.*, *Ruiz*, 868 S.W.2d at 753 (holding unsound mind tolling applied when plaintiff had severe and permanent head injury); *Palla v. McDonald*, 877 S.W.2d 472, 474–77 (Tex. App.—Houston [1st Dist.] 1994, no writ)

7

(reversing summary judgment on limitations when plaintiff suffered from permanent brain damage and blindness).

In contrast, the record here, including judicial admissions made by Rollins in his pleadings, reflects that Rollins engaged in activities demonstrating an ability to manage his own affairs, participate in a lawsuit, and understand his legal rights. Specifically, the record reflects that, during adulthood, Rollins was employed, attended college, traveled abroad, possessed a driver's license, drove a car, and was convicted of criminal offenses, including theft and numerous charges of driving while intoxicated. *See Catholic Diocese of El Paso*, 362 S.W.3d at 724 (noting evidence showing that plaintiff had been employed, attended college, remained married, and had children tended to show he was sound mind). I agree with the majority that these past activities, under the facts of this case, do not alone establish that Rollins was of sound mind. *See Myers v. St. Stephen's United Methodist Church*, No. 01-96-001460-CV, 1998 WL 723887, at *4 (Tex. App.—Houston [1st Dist.] Oct. 8, 1998, pet. denied) (not designated for publication). But these past activities do provide important context for the Pressler Defendants' evidence of the Dallas lawsuit, which did conclusively establish that, when his claims in this suit accrued in 2004, Rollins had the ability to participate in, control, and understand the progression and disposition of a lawsuit against Pressler for tortious conduct. *See Ruiz*, 868 S.W.2d at 755; c*f. Myers*, 1998 WL 723887, at *4 (reversing summary

judgment because movant had not presented conclusive evidence that plaintiff was not of unsound mind at time his cause of action accrued).

Based on the record, I would hold that the Pressler Defendants met their summary-judgment burden to conclusively negate the application of the unsound mind tolling doctrine. Because the majority reaches the opposite conclusion, I respectfully dissent.

Richard Hightower
Justice

Panel consists of Justices Goodman, Landau, and Hightower.

Hightower, J., dissenting.